MCC:JJT:mel:2001V01054

FILED
WILLIAMSPORT, PA
DEC 21 2001
MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL NORWOOD,  :
    Plaintiff  :
  :
v.  :  Civil No. 1:CV-01-1005
  :  (Caldwell, J.)
DONALD ROMINE, Warden,  :  (Smyser, M.J.)
    Defendant  :

### BRIEF IN SUPPORT OF DEFENDANT ROMINE'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

This is a <u>Bivens</u> claim brought by a federal pro se inmate, Michael Norwood, against Donald Romine, the Warden of USP Lewisburg. Norwood complains that he is not approved for the Bureau of Prisons' religious alternative diet program. Specifically, Norwood states that he is a follower of the Nation of Islam and claims that he must be provided with disposable eating utensils in order to follow the dietary laws of his faith. He requests injunctive and monetary relief.

This brief is submitted in support of defendant Romine's motion to dismiss and for summary judgment filed on December 10, 2001. Warden Romine argues that: (1) the doctrine of <u>respondeat superior</u> cannot form the basis of a <u>Bivens</u> claim; (2) sovereign immunity bars Norwood's suit for money damages against the Warden in his official capacity; and (3) summary judgment is appropriate

as the dietary laws of Norwood's faith do not require the use of disposable utensils.

## Statement of Facts

Bureau of Prisons policy as codified at 28 C.F.R. § 548.10(a), states:

> The Bureau of Prisons provides inmates of all faith groups with reasonable and equitable opportunities to pursue religious beliefs and practices, within the constraints of budgetary limitations and consistent with the security and orderly running of the institution and the Bureau of Prisons.

Bureau of Prisons policy regarding religious dietary practices states:

> The Bureau provides inmates requesting a religious diet reasonable and equitable opportunity to observe their religious dietary practice within the constraints of budget limitations and the security and orderly running of the institution and the Bureau through a religious diet menu. The inmate will provide a written statement articulating the religious motivation for participation in the religious diet program.

Bureau of Prisons' Program Statement 5360.08, Religious Beliefs and Practices, Page 13 (see Record to Brief in Support of Defendant Romine's Motion to Dismiss and for Summary Judgment ("Record") at 15); 28 C.F.R. 548.20(a)[1].

On October 28, 2000, Norwood submitted a written request to USP Lewisburg Religious Services Department staff asking for a "Kosher or Halal" diet. In response to a question asking, "What

---

[1] The words "religious diet" and "common fare" are interchangeable.

2

are the religious reasons for your dietary needs?," Norwood responded, "The Holy Quoran based on Nation of Islam Teachings." (Record, p. 2, ¶ 5 and p. 21.)

Norwood was interviewed by Religious Services' staff member Abdulfattah Jamiu, on October 31, 2000.[2] Chaplain Jamiu concluded that Norwood's dietary needs could be satisfied merely by his participation in the "mainline component" of the religious diet. That is, Norwood could self-select from several food choices offered by USP Lewisburg Food Service--i.e., the main steam line entree, an alternative no-flesh menu, or select from a well stocked salad bar, which is available every day. (Record at 2, ¶ 5.) This decision was documented on Norwood's religious interview form. (Record at 32.)

The determination that Norwood did not require the certified (Halal or Kosher) processed food component of the religious diet was made on the basis of Norwood's self-stated membership with the Nation of Islam and his adherence to Nation of Islam Teachings. (Record at 2, ¶ 6.) Nation of Islam dietary requirements are set forth in the book *How to Eat to Live* by Elijah Muhammad, the founder to the Nation of Islam. According to the founder of the religious group to which Norwood claims membership, there is no requirement for disposable eating

---

[2] Chaplain Jamiu is an Imam, or religious leader, in the Muslim Faith.

3

utensils, or any instructions for special cleaning requirements for eating utensils. (Record at 2, ¶ 6, and pp. 23-24.)

Norwood filed administrative remedies concerning his request for disposable utensils and was denied relief at the institutional, Regional, and Central Office levels. (Record at 25-31.) In response to his administrative remedies, Norwood was informed that his religious dietary needs were determined based on the responses he provided during his interview with Religious Services staff. He was also informed that he may request a re-interview at six month intervals. (Record at 26.) To date, Norwood has not re-applied. (Record at 2, ¶ 7.)

Warden Romine is not involved in the day to day evaluation of inmates for placement on the Bureau of Prisons' religious alternative diet program. (Record at 33, ¶ 3.) Rather, the evaluation and placement of inmates in the religious diet program is the responsibility of the Religious Services Department. (Id.) Therefore, defendant Romine had no input in the decisions of how to accommodate Norwood's stated religious dietary needs.

### Questions Presented

1. Should Warden Romine be dismissed as the doctrine of <u>respondeat</u> <u>superior</u> cannot form the basis of a <u>Bivens</u> claim?

2. Should the money claims against Warden Romine in his official capacity be dismissed as barred by sovereign immunity?

3. Should summary judgment be granted as the religious dietary needs of the Nation of

4

      Islam does not require use of disposable utensils?

### Argument

A. **Defendant Romine, As A Supervisory Official, Is Not Personally Liable In A Bivens Action Under The Doctrine Of Respondeat Superior.**

Norwood has named Donald Romine as the only defendant to this action because he is the Warden of USP Lewisburg and, as such, he is "legally responsible for regulating prisoner activities at USP Lewisburg, including those relating to religious diets." (Am. Compl. at 1.) To the extent Norwood's complaint is read as alleging liability by virtue of defendant Romine's position as Warden of USP Lewisburg, it is well-settled that the doctrine of <u>respondeat superior</u> cannot form the basis of a <u>Bivens</u> claim. <u>Rizzo v. Goode</u>, 423 U.S. 362, 371 (1976); <u>Robertson v. Sichel</u>, 127 U.S. 507, 515-17 (1888); <u>Farmer v. Carlson</u>, 685 F. Supp. 1335, 1338 (M.D. Pa. 1988); <u>Fayerweather v. Bell</u>, 447 F. Supp. 913 (M.D. Pa. 1978). <u>Cf</u>. <u>Young v. Quinlan</u>, 960 F.2d 351, 358, n.14 (3d Cir. 1992). In <u>Haynesworth v. Miller</u>, 820 F.2d 245 (D.C. Cir. 1987), this proposition was concisely explained:

> [I]n order to find a supervisory official personally liable in damages for the unconstitutional [or otherwise wrongful] acts of his subordinate, it must be shown that he was responsible for supervising the wrongdoer; that a duty to instruct the subordinate to prevent constitutional [or other harm arose from the surrounding circumstances; and that, as a result of the official's failure to instruct, the plaintiff was harmed in the manner threatened.

Id. at 1262. See generally Farmer v. Brennan, 511 U.S. 825, 837 (1994) (a prison official cannot be found liable under the Eighth Amendment unless he knows of and disregards an excessive risk to an inmate's health or safety).

Furthermore, personal involvement or some affirmative action on the part of a defendant is necessary before he may be found liable for a civil rights violation. See Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990); Rode v. Dellarciprete, 845 F.2d 1195 (3d Cir. 1988); Stoneking v. Bradford Area School District, 882 F.2d 720, 729-30 (3d Cir. 1980); Flanagan v. Shively, 783 F. Supp. 922 (M.D. Pa. 1992), aff'd, 980 F.2d 722 (3d Cir. 1992); Farmer v. Carlson, 685 F. Supp. 1335 (M.D. Pa. 1988). "A supervising public official has [no] affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates." Chinchello v. Fenton, 805 F.2d 126 (3d Cir. 1986).

In his capacity as Warden, defendant Romine is not involved in the day to day evaluation of inmates for placement on the Bureau of Prisons' religious alternative diet program. It is the responsibility of the Religious Services Department. Warden Romine had no input in the decisions of how to accommodate Norwood's stated religious dietary needs. (Record at 33, ¶ 2.) The fact that he holds a supervisory position does not in and of

itself expose him to <u>Bivens</u> liability. Therefore, Warden Romine should be dismissed.

B. **<u>Warden Romine Is Entitled To Sovereign Immunity.</u>**

In <u>Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), the Supreme Court implied a cause of action for damages against federal employees for the violation of constitutional rights. The same immunities that are granted to state officials in § 1983 civil rights actions apply to federal employees. <u>Butz v. Economou</u>, 438 U.S. 478, 496-505 (1978).

Likewise, sovereign immunity equally applies in <u>Bivens</u> actions. Thus, plaintiffs cannot bring <u>Bivens</u> actions against the United States, federal agencies, or federal employees sued in their official capacities. <u>FDIC v. Meyer</u>, 510 U.S. 471, 486 (1994); <u>Chinchello v. Fenton</u>, 805 F.2d 126, 130 n.4 (3rd Cir. 1986); <u>Laswell v. Brown</u>, 683 F.2d 261, 267-68 (8th Cir. 1982); <u>See also</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66 (1985)(suit against officer in official capacity is the same as a suit against the sovereign). To the extent Norton's money claims are against the Warden in his official capacity, they are barred by sovereign immunity and should be dismissed.

C.   **There Are No Genuine Issues of Material Fact As The Religious Dietary Needs of the Religious Group That Norwood Claims to be a Member Does Not Require Use of Disposable Utensils.**

The Bureau of Prisons' current policy on religious diets aims to ensure inmates who have legitimate dietary needs are given a reasonable opportunity to meet those needs. See 28 C.F.R. §§ 548.10, 548.20. "Inmates do not have an absolute right to practice their religion; rather the courts will uphold a prison regulation that infringes on the First Amendment right of free exercise of religion if it is reasonably related to a legitimate penological interest." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987). Young v. Coughlin, 866 F.2d 567, 570 (2d Cir. 1989). Because of the expense of providing Kosher or Halal standard certified processed foods, Bureau of Prisons policy requires inmates to accurately articulate their religious reasons for requiring this special diet. 28 C.F.R. § 548.20(a). Norwood has not met that burden.

The religious dietary requirements of the religious group to which Norwood claims membership (i.e., the Nation of Islam) has clear and extensive dietary rules, however it does not require the disposable utensils he is seeking. According to the tenets of his own religious group, his religious dietary needs can be satisfied by choosing from the mainline entree, the no-flesh option, or the salad bar. (Record at 2, ¶ 5.) Accordingly, defendants are entitled to an entry of summary judgment.

Pursuant to Fed. R. Civ. P. 56, summary judgment is appropriately entered when the moving party demonstrates, by affidavit or otherwise, that there are no genuine issues as to any material fact to be resolved. See Peterson v. Lehigh Valley District Counsel 676 F.2d 81, 84 (3d Cir. 1982); Continental Insurance v. Bodie, 682 F.2d 436, 438 (3d Cir. 1982). An issue of fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986); Equimark Comm. Finance Company v. CIT Finance Services Corporation, 812 F.2d 141, 144 (3d Cir. 1987). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, summary judgment must be entered in favor of the movants. See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

The Supreme Court has ruled that Fed. R. Civ. P. 56 "mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The Court also stated in Celotex that the party moving for summary judgment need not, as a matter of course, support its motion with affidavits. The Court reasoned that "the impact of these subsections [Fed. R.Civ. P. 56 (a)-(e)]

is that, regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may and should be granted <u>so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment</u>, as set forth in Rule 56(c) <u>is satisfied</u>." 477 U.S. at 323 (emphasis added).

As the Third Circuit has recognized, summary judgment "is no longer a disfavored procedural shortcut, and may present the district court with the opportunity to dispose of meritless cases.... This is true even in ... cases[] 'where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot.'" <u>Big Apple BMW, Inc. v. BMW of North America, Inc.</u>, 974 F.2d 1358, 1362 (3d Cir. 1992)(<u>quoting</u> <u>Poller v. Columbia Broadcasting System</u>, 368 U.S. 464, 473 (1962)). To defeat summary judgment, an opponent cannot merely discredit "the credibility of the movant's evidence; it <u>must</u> produce some affirmative evidence." <u>Big Apple BMW</u>, 974 F.2d at 1363.

The determination that Norwood did not require the certified (Halal or Kosher) processed food component of the religious diet was made on the basis of Norwood's self-stated membership with the Nation of Islam and his adherence to Nation of Islam Teachings. According to the founder of the religious group to which Norwood claims membership, there is no requirement for

10

disposable eating utensils, or any instructions for special cleaning requirements for eating utensils. (Record at 2, ¶ 6 and pp. 23-24.) Therefore, Warden Romine is entitled to an entry of summary judgment in his favor.

### V. Conclusion

For the reasons stated above, defendant Romine's motion to dismiss and for summary judgment should be granted with a certification that any appeal would be deemed frivolous, lacking in probable cause, and not taken in good faith.

Respectfully submitted,

MARTIN C. CARLSON
United States Attorney

*Joseph J. Terz*

JOSEPH J. TERZ
Assistant U.S. Attorney
MICHELE E. LINCALIS
Paralegal Specialist
316 Federal Building
240 West Third Street
Williamsport, PA  17703

Date: December 21, 2001

11

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL NORWOOD,
        Plaintiff    :

        v.        :  Civil No. 1:CV-01-1005
             :  (Caldwell, J.)
DONALD ROMINE, Warden,  :  (Smyser, M.J.)
        Defendant  :

### CERTIFICATE OF SERVICE BY MAIL

    The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

    That on December 21, 2001, she served a copy of the attached

**BRIEF IN SUPPORT OF DEFENDANT ROMINE'S
MOTION TO DISMISS
AND FOR SUMMARY JUDGMENT**

by placing said copies in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Williamsport, Pennsylvania.

Addressee:

Michael Norwood
Reg. No. 06970-014
U.S. Penitentiary
P.O. Box 1000
Lewisburg, PA 17837

                                                */s/ Michele E. Lincalis*
                                           MICHELE E. LINCALIS
                                           Paralegal Specialist