MCC:JJT:mel:2001V01054

FILED
WILLIAMSPORT PA

DEC 2 1 2001

MARY E. D'ANDREA, CLERK
Per _____
            Deputy Clerk

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL NORWOOD,                    :
            Plaintiff              :
                                   :
            v.                     :    Civil No. 1:CV-01-1005
                                   :    (Caldwell, J.)
DONALD ROMINE, Warden,             :    (Smyser, M.J.)
            Defendant              :

## RECORD TO BRIEF IN SUPPORT OF DEFENDANT ROMINE'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

MARTIN C. CARLSON
United States Attorney

JOSEPH J. TERZ
Assistant U.S. Attorney
MICHELE E. LINCALIS
Paralegal Specialist
316 Federal Building
240 West Third Street
Williamsport, PA  17703

Date: December 21, 2001

# TABLE OF CONTENTS

Declaration of Edward Roberts . . . . . . . . . . . . . . . . 1

Program Statement 5360.08,
      Religious Beliefs and Practices, . . . . . . . . . . . . 3

Religious Diet Interview dated 10/28/00 . . . . . . . . . 21

Notification of Religious Diet Accommodation
      dated 10/30/00 . . . . . . . . . . . . . . . . . . . 22

How to Eat to Live by Elijah Muhammad . . . . . . . . . . 23

Central Office Administrative Remedy Appeal
      and Response . . . . . . . . . . . . . . . . . . . . 25

Regional Administrative Remedy Appeal
      and Response . . . . . . . . . . . . . . . . . . . . 27

Request for Administrative Remedy
      and Response . . . . . . . . . . . . . . . . . . . . 29

Informal Resolution Attempt . . . . . . . . . . . . . . . 31

Notification of Religious Diet Accommodation . . . . . . . 32

Declaration of D. Romine . . . . . . . . . . . . . . . . . 33

IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OR PENNSYLVANIA

Michael Norwood,                )
  Plaintiff                     )
                          )      1:CV-01-1005
                          )
v.                              )
                          )
Donald Romine,                  )
  Defendant                     )
                          )

## DECLARATION OF EDWARD ROBERTS

I, Edward Roberts, hereby state:

1.      I am presently employed by the Federal Bureau of Prisons as the Supervisory Chaplain at the United States Penitentiary (USP) at Lewisburg, Pennsylvania. I am aware of the above referenced civil action in which inmate Michael Norwood, Reg.No. 06970-014, claims that he must have disposable eating utensils to satisfy his religious dietary needs. Inmate Norwoods states that he is a member of the Nation of Islam.

2.      Bureau of Prisons policy as codified at 28 C.F.R.§ 548.10(a), states:

> *The Bureau of Prisons provides inmates of all faith groups with reasonable and equitable opportunities to pursue religious beliefs and practices, within the constraints of budgetary limitations and consistent with the security and orderly running of the institution and the Bureau of Prisons.*

3.      With regard to religious dietary practices, Bureau of Prisons policy as codified at 28 C.F.R.§ 548.20, provides:

> *The Bureau provides inmate requesting a religious diet reasonable and equitable opportunity to observe a religious dietary practice with the constraints of budget limitations and the security and orderly running of the institution and the Bureau through a religious diet menu. The inmate will provide a written statement articulating the religious motivation for participation in the religious diet program.*

4.      A true and correct copy of Bureau of Prisons Program Statement 5360.08, <u>Religious Beliefs and Practices</u>, is attached.

5.   Inmate Norwood submitted a written request to USP Lewisburg Religious Services staff on October 28, 2000, asking for a "Kosher or Halal" diet.   A true and correct copy of the form is attached.   In response to question #2,  asking "What are the religious reasons for your dietary needs?", inmate Norwood responded,  "The Holy Quoran based on Nation of Islam Teachings".    Inmate Norwood was interviewed by Religious Services' staff on October 31, 2000.   The Religious Services staff member who conducted the interview  is an Imam, or religious leader, in the Muslim Faith.   This Chaplain concluded that inmate Norwood's dietary needs could be satisfied by participation in the mainline component of the Religious diet.   This decision was documented on the inmate's religious interview form.    As such, inmate Norwood can self-select from several food choices offered by USP Lewisburg Food Service– the main steamline entree, a alternative no-flesh menu, or select from a well stocked salad bar, which is available every day.

6.   The determination that inmate Norwood did not require the certified (Halal or Kosher) processed food component of the religious diet was made on the basis of the plaintiff's self stated membership with the Nation of Islam and his adherence to Nation of Islam Teachings.     Nation of Islam dietary requirements are set forth in the book **How to Eat to Live** by Elijah Muhammad, the founder to the Nation of Islam.  A true and accurate copy of the book's cover is attached.   According to the founder of the religious group to which inmate Norwood claims membership, the Nation of Islam has clear and extensive dietary rules, however it does not reference a requirement for the disposable utensils he is seeking.  Further, there is no requirement or any instructions for special cleaning requirements for eating utensils.

7.   Inmate Norwood filed administrative remedies concerning his request for disposable eating utensils.  His requests were denied at the institution, regional and central office levels.  Accurate copies of these requests for administrative remedy are attached. Inmate Norwood was informed in the responses to his administrative remedies that Bureau of Prisons' policy provides for him to re-apply for consideration for the religious alternative diet.  To date, inmate Norwood has not re-applied.

I hereby state under penalty of perjury pursuant to the provisions of 28 U.S.C. § 1746 that the above is accurate to the best of my knowledge.

Edward Roberts
Supervisory Chaplain
United States Penitentiary
Lewisburg, Pennsylvania.

11/28/01
Date

000002



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement

| | |
|---|---|
| **OPI:** | CPD |
| **NUMBER:** | 5360.08 |
| **DATE:** | 5/25/2001 |
| **SUBJECT:** | Religious Beliefs and Practices |

1. **[PURPOSE AND SCOPE** §548.10.(a)  **The Bureau of Prisons provides inmates of all faith groups with reasonable and equitable opportunities to pursue religious beliefs and practices, within the constraints of budgetary limitations and consistent with the security and orderly running of the institution and the Bureau of Prisons.]**

2. **SUMMARY OF CHANGES**

   - The words "**religious diet**" have replaced "**common fare**" in Section 19 (28 CFR §548.20);
   - Unauthorized religious practices and activities are listed;
   - Sacraments and sacred rituals will be available in Special Housing Units;
   - Inmates are not permitted to contact volunteers or contractors through the Inmate Telephone System or place them on their telephone lists;
   - Procedures for pastoral calls for inmates, including monitoring of the telephone conversations, have been clarified.  A log will be kept of all pastoral calls;
   - Clarification is provided for clergy visits.  This includes the definition of minister of record;
   - Procedures for participation in the religious diet program have been completely rewritten; and,
   - Due dates for the annual report have been changed.

3. **PROGRAM OBJECTIVES.**  The expected results of this program are:

   a.  Religious resources will be equitably distributed for the benefit of all inmates.

**[Rules – Bracketed Bold]**
Implementing Text – Regular Type

b.  The religious rights of inmates of all faiths will be protected within the parameters of the secure and orderly running of the institution.

c.  Pastoral care will be available to inmates and staff.

d.  Expertise on matters of religion in the correctional environment will be available for staff.

4.  **DIRECTIVES AFFECTED**

a.  **Directive Rescinded**

PS 5360.07      Religious Beliefs and Practices (8/25/97)

b.  **Directives Referenced**

| | |
|---|---|
| PS 1350.02 | Donations, Acceptance of (6/29/98) |
| PS 3420.09 | Standards of Employee Conduct (2/5/99) |
| PS 3939.06 | Professional Endorsements of BOP Chaplains (8/25/97) |
| PS 4510.05 | Inmate Contributions (1/26/99) |
| PS 4761.04 | Special Foods or Meals From Outside Sources Introduced into Institutions (4/22/96) |
| PS 5264.06 | Telephone Regulations for Inmates (1/3/96) |
| PS 5266.09 | Incoming Publications (7/29/99) |
| PS 5267.06 | Visiting Regulations (5/17/99) |
| PS 5280.08 | Furloughs (2/4/98) |
| PS 5300.20 | Volunteers and Citizens Participation Programs (6/1/99) |
| PS 5326.04 | Marriages of Inmates (12/17/98) |
| PS 5500.09 | Correctional Services Manual (10/27/97) |
| PS 5538.04 | Escorted Trips (12/23/96) |
| PS 5553.06 | Escapes/Death Notification (8/23/99) |
| PS 5580.06 | Personal Property, Inmate (7/19/99) |
| PS 5800.12 | Receiving and Discharge Manual (8/17/98) |
| TRM 5303.01 | Ministry of the Federal Bureau of Prisons (6/1/95) |

c.  Rules cited in this Program Statement are contained in 28 CFR §548.10-20 and 28 CFR §540.48.

5.  **STANDARDS REFERENCED**

a.  American Correctional Association Standards for Adult Correctional Institutions 3rd Edition: 3-4261, 3-4265, 3-4274,

PS 5360.08
5/25/2001
Page 3

3-4300, 3-4301, 3-4374, 3-4375, 3-4387, 3-4454, 3-4455, 3-4456,
3-4457, 3-4458, 3-4459, 3-4460, 3-4461, 3-4462, 3-4463

   b.  American Correctional Association Standards for Adult Local
Detention Facilities 3rd Edition: 3-ALDF-3D-24, 3-ALDF-3E-04,
3-ALDF-4C-07, 3-ALDF-4C-08, 3-ALDF-4E-44, 3-ALDF-4E-45,
3-ALDF-4F-04, 3-ALDF-5F-01, 3-ALDF-5F-02, 3-ALDF-5F-03,
3-ALDF-5F-04, 3-ALDF-5F-05, 3-ALDF-5F-O6, 3-ALDF-5F-07,
3-ALDF-5F-09, 3-ALDF-5F-10

   c.  American Correctional Association 2nd Edition Standards for
the Administration of Correctional Agencies:  2-CO-5E-01

**6.  PRETRIAL, HOLDOVER, AND DETAINEE PROCEDURES.**  Procedures in
this Program Statement apply to Pretrial, Holdover, and Detainee
Centers.  The exception to these procedures exists where building
design prevents the maintenance of an outdoor worship area,
including the sweat lodge (see Section 12.c. of this Program
Statement).

**7.  RELIGIOUS OPPORTUNITIES AND LIMITATIONS  [§548.10 (b)  When
considered necessary for the security or good order of the
institution, the warden may limit attendance at or discontinue a
religious activity.  Opportunities for religious activities are
open to the entire inmate population, without regard to race,
color, nationality, or ordinarily, creed.  The warden, after
consulting with the institution chaplain, may limit participation
in a particular religious activity or practice to the members of
that religious group.  Ordinarily, when the nature of the
activity or practice (e.g., religious fasts, wearing of headwear,
work proscription, ceremonial meals) indicates a need for such a
limitation, only those inmates whose files reflect the pertinent
religious preference will be included.]**

The level of scheduled activities is expected to be commensurate
with the institution's mission/need.  Worship services will be
made available for all inmates weekly.  Generally approved
practices for each religion are included in the Inmate Beliefs
and Practices Technical Reference Manual.  The following
religious practices and activities are never authorized:

- animal sacrifice;
- casting of spells/curses;
- nudity;
- self-mutilation;
- use or display of weapons;
- exclusion by race;
- paramilitary exercises;

- self-defense training;
- sexual acts;
- profanity;
- consumption of alcohol;
- ingestion of illegal substances;
- proselytizing; and,
- encryption.

When necessary, Wardens may identify alternatives practices and implement the least restrictive alternative consistent with the security and orderly running of Bureau institutions.

8. **RELIGIOUS PREFERENCES** **[§548.10 (c) The Bureau of Prisons does not require an inmate to profess a religious belief. An inmate may designate any or no religious preference at his/her initial team screening. By notifying the chaplain in writing, an inmate may request to change this designation at any time, and the change will be effected in a timely fashion.]**

Unit staff will enter the initial religious preference (RLG) assignment into SENTRY at the inmate's intake screening. When the chaplain approves an inmate's request for changing a religious preference, the chaplain is responsible for making the necessary change in the SENTRY RLG assignment.

To maintain the security and orderly running of the institution, and to prevent abuse or disrespect by inmates, the chaplain will monitor patterns of changes in declarations of religious preference.

In determining whether to allow an inmate to participate in specific religious activities, as described in Section 7, (548.10(b)) above, staff may wish to refer to the information reported on the intake screening form and the inmate's religious preference history. Inmates showing "No Preference" may be restricted from participating in activities deemed appropriate for members only.

9. **[DEFINITION §548.11. For purposes of this subpart, the term "religious activity" includes religious diets, services, ceremonies, and meetings.]**

10. **[CHAPLAINS §548.12. Institution chaplains are responsible for managing religious activities within the institution. Institution chaplains are available upon request to provide pastoral care and counseling to inmates through group programs and individual services. Pastoral care and counseling from representatives in the community are available in accordance with**

PS 5360.08
5/25/2001
Page 5

the provisions of §§ 548.14 and 548.19.  The chaplain may ask the requesting inmate to provide information regarding specific requested religious activities for the purpose of making an informed decision regarding the request.]

28 CFR 548.14 and 19 refer to Sections 13 and 18 respectively of this Program Statement.

All chaplains are qualified pastoral care providers who have verified credentials and current endorsements on file.  Chaplains plan, direct, and supervise all aspects of the religious program and have physical access to all areas of the institution to minister to inmates and staff.  All institution chaplains are employed to:

- lead worship services,
- provide professional spiritual leadership and pastoral care;
- accommodate the legitimate religious needs of inmates; and,
- supervise institution religious activities.

Chaplaincy Services support staff may assist the chaplains in supervising the institution's religious activities and administrative duties, but may not perform duties reserved for professional chaplains.

  a.  **Special Housing Unit Religious Access.**  Ordinarily, all inmates, except those in the Special Housing Units (SHU), have access to regularly scheduled congregate services.  Inmates of all faiths will have regular access to chaplains and recognized representatives of their faith groups while in SHUs.  Each chaplain will provide pastoral care in SHUs and hospital units weekly.

  Chaplains will provide opportunities for individuals to receive the sacraments and sacred rituals in SHUs.  This includes, but is not limited to, communion and Sabbath prayer items--matzo and grape juice.  Ordinarily, sacred pipe use will be accommodated in Administrative Detention.  The Warden may determine the circumstances under which the sacred pipe may be used in Disciplinary Segregation.

  b.  **Telephone Calls.**  Individual pastoral care includes counseling inmates and/or their families in personal crisis and family emergency situations.  Chaplains may facilitate inmate telephone calls in emergency situations.

000007

Each Chapel will be equipped with an inmate telephone which is capable of monitoring inmate telephone conversations electronically during the pastoral calls.  A notice in English and Spanish will be placed at the telephone location to advise the user that all conversations are subject to monitoring and that using the telephone constitutes consent.  This telephone will be separate from the telephones provided for staff use.

Chaplains will maintain a telephone log which includes:

- the date, telephone number, and person called,
- name and register number of the inmate, and,
- a brief reason for the call.

c.  **Pregnant Inmates**.  Pregnant inmates will be offered religious counseling to aid in making an informed decision whether to carry the pregnancy to full term.

d.  **Deaths and Serious Illnesses**.  Each institution will establish clear procedures to involve a chaplain in notifying inmates and/or their families of serious illness or death of either inmates or their family members.  The chaplain will coordinate appropriate religious rituals at the time of an inmate's serious illness or death.

Also, the chaplain may advise the Warden regarding religious factors which may influence decisions concerning the performance of autopsies on deceased inmates and the proper disposition of the remains.

11.  **INTRODUCTION OF NEW AND UNFAMILIAR RELIGIOUS COMPONENTS**. Inmates may request the introduction of new or unfamiliar religious components into the Chaplaincy Services program.  When information is required regarding a specific new practice, the chaplain may ask the inmate to provide additional information which would be considered when deciding to include or exclude the practice from the Chaplaincy Services program.

a.  **Religious Issues Committee (RIC)**.  When a decision cannot be reached locally, a RIC at the Central Office, appointed by the Assistant Director of the Correctional Programs Division, will review inmate requests for introduction of new religious components into the overall religious program.

The RIC is to meet as necessary and maintain records of its recommendations.  Periodically, the RIC will issue summary reports and recommendations to all Chief Executive Officers.

PS 5360.08
5/25/2001
Page 7

b.  **Requests.**  Inmate requests are made by completing the "New or Unfamiliar Religious Components Questionnaire" form (MISC-100) and submitting it to the chaplain for routing to the Central Office RIC through the Warden and Regional Director.

Upon completing the review, the RIC will make recommendations to the Warden regarding the request's appropriateness.  The Warden will determine the local disposition of the request after the institution receives the RIC recommendations.

c.  **Implementation of the RIC Recommendation.**  Decisions regarding the Chaplaincy Services program's expansion rest with the Warden, and are subject to the institution's parameters for maintaining a safe and secure institution and availability of staff for supervision.

12.  [SCHEDULES AND FACILITIES §548.13

a.  **Under the general supervision of the warden, chaplains shall schedule and direct the institution's religious activities.]**

Current program schedules will be posted in English and Spanish on bulletin boards clearly visible to the inmate population.

[b.  **The warden may relieve an inmate from an institution program or assignment if a religious activity is also scheduled at that time.]**

In scheduling approved religious activities, chaplains will consider both the availability of staff supervision and the need to share the time and space available among the eligible groups.

[c.  **Institutions shall have space designated for the conduct of religious activities.]**

This designated space will be sufficient to accommodate the needs of all religious groups in the inmate population fairly and equitably.  Chaplaincy Services areas will be neutral and suitable for use by various faith groups.  The general area will include:

- office space for each chaplain;
- storage space for the needs of the religious programs; and,
- proximity to lavatory facilities for staff and volunteers.

000009

PS 5360.08
5/25/2001
Page 8

An outside worship area, including the sweat lodge, will be maintained in a suitable, secure, and private location, except in institutions where building design or security considerations would prohibit its construction.

13.   **[COMMUNITY INVOLVEMENT (VOLUNTEERS, CONTRACTORS) §548.14**

   **a.   The institution's chaplain may contract with representatives of faith groups in the community to provide specific religious services which the chaplain cannot personally deliver due to, ordinarily, religious prescriptions or ecclesiastical constraints to which the chaplain adheres.]**

   The particular needs of women and special needs inmates may require the contracting of spiritual counselors or advisers for religious needs other than those of a specific faith tradition.

   **[b.   The institution chaplain may secure the services of volunteers to assist inmates in observing their religious beliefs.]**

   Institutions unable to secure volunteers to meet religious needs may request a written waiver from the Regional Director.

   Inmates may not place volunteers or contractors on their telephone lists or use the Inmate Telephone System to contact volunteers or contractors.  If a specific program need exists, the chaplain may facilitate and monitor a telephone call.  A Level I volunteer, a badged volunteer (Level II) or contractor will not be a minister of record or placed on an inmate's Visiting List.

   **[c.   The warden or the warden's designee (ordinarily the chaplain) may require a recognized representative of the faith group to verify a volunteer's or contractor's religious credentials prior to approving his or her entry into the institution.]**

   The term "representatives of faith groups" includes both clergy and spiritual advisors.  All contractual representatives of inmate faith groups will be afforded equal status and treatment to help inmates observe their religious beliefs, unless the security and orderly running of the institution warrants otherwise.

   Ordinarily, inmates of any faith tradition will have access to their faith group's official representatives while in special housing or hospital units.  Inmates in the SHU will make the

request for a visit with their faith representative through the chaplain, and requests will be accommodated consistent with the terms of the representative's contract and the security and orderly running of the institution.

If the faith group representative is a volunteer, he or she will always be escorted in the SHU. As an alternative to facilitate supervision, the approved SHU visit may occur in the Visiting Room during regularly scheduled visiting hours.

14. **[EQUITY §548.15. No one may disparage the religious beliefs of an inmate, nor coerce or harass an inmate to change religious affiliation. Attendance at all religious activities is voluntary and, unless otherwise specifically determined by the warden, open to all.]**

15. **[INMATE RELIGIOUS PROPERTY §548.16**

   **a. Inmate religious property includes but is not limited to rosaries and prayer beads, oils, prayer rugs, phylacteries, medicine pouches, and religious medallions. Such items, which become part of an inmate's personal property, are subject to normal considerations of safety and security. If necessary, their religious significance shall be verified by the chaplain prior to the warden's approval.]**

Personal religious items may not be purchased with appropriated funds. All personal religious property will be purchased either from commissary stock or through an approved catalogue source using the Special Purpose Order process. No religious item may have a monetary value greater than $100.

**[b. An inmate ordinarily shall be allowed to wear or use personal religious items during religious services, ceremonies, and meetings in the chapel, unless the warden determines that the wearing or use of such items would threaten institution security, safety, or good order. Upon request of the inmate, the warden may allow the wearing or use of certain religious items throughout the institution, consistent with considerations of security, safety, or good order.**

**The warden may request the chaplain to obtain direction from representatives of the inmate's faith group or other appropriate sources concerning the religious significance of the items.]**

PS 5360.08
5/25/2001
Page 10

Religious headwear, notably kufis, yarmulkes, turbans, crowns, and headbands, as well as scarves and head wraps for orthodox Muslim and Jewish women, is permitted in all areas of the institution, subject to the normal considerations of security and good order, including inspection by staff.  Ordinarily, staff will use SENTRY religious preference data to verify an inmate's authority to wear religious headwear.  Religious headwear permit cards are discouraged because of the perceived connotation of religious discrimination and/or violations of religious freedom and privacy.

A list of generally authorized and transferable inmate religious property is contained in the Inmate Beliefs and Practices Technical Reference Manual.  Disposable headwear is made available to inmates requiring headwear while in transit.

**[c.  An inmate who wishes to have religious books, magazines or periodicals must comply with the general rules of the institution regarding ordering, purchasing, retaining, and accumulating personal property.  Religious literature is permitted in accordance with the procedures governing incoming publications. Distribution to inmates of religious literature purchased by or donated to the Bureau of Prisons is contingent upon the chaplain's granting his or her approval.]**

A reasonable portion of the Chaplaincy Department budget will be used to purchase a variety of religious literature and audio and video tapes for general inmate use.  Media resources purchased with appropriated funds will be provided equitably. Donated religious media resources will be accepted in accordance with the Program Statement on Acceptance of Donations.  All media resources will be previewed by staff, or staff-designated volunteers, prior to distribution.

16.   **[WORK ASSIGNMENTS §548.17.  When the religious tenets of an inmate's faith are violated or jeopardized by a particular work assignment, a different work assignment ordinarily shall be made after it is requested in writing by the inmate, and the specific religious tenets have been verified by the chaplain.  Maintaining security, safety and good order in the institution are grounds for denial of such request for a different work assignment.]**

17.   **[OBSERVANCE OF RELIGIOUS HOLY DAYS §548.18.  Consistent with maintaining security, safety, and good order in the institution, the warden shall endeavor to facilitate the observance of important religious holy days which involve special fasts, dietary regulations, worship, or work proscription.  The inmate**

must submit a written request to the chaplain for time off from work to observe a religious holy day. The warden may request the chaplain to consult with community representatives of the inmate's faith group and/or other appropriate sources to verify the religious significance of the requested observance.

The chaplain will work with requesting inmates to accommodate a proper observance of the holy day. The warden will ordinarily allow an inmate to take earned vacation days, or to make up for missed work, or to change work assignments in order to facilitate the observance of the religious holy day.]

The Central Office Chaplaincy Services Branch, Correctional Programs Division (CPD), maintains a general list of recognized holy days to identify days on which inmates of various faith groups may seek to be excused from work. The list is published annually in an Operations Memorandum, but, because of the changing nature of religious observances, it is not exhaustive.

The number of days off work for religious holy day observances is not limited to one per year. Requests for days off work by members of religions not included in the above-mentioned OM are to be given due consideration and authorized when appropriate. Days free from work are determined by the religious community standard and ordinances of faith groups. Absent religious community information, the Bureau does not have the authority to determine whether inmates should be free from work for religious reasons on particular days.

18.  [PASTORAL VISITS §548.19.  If requested by an inmate, the chaplain shall facilitate arrangements for pastoral visits by a clergy person or representative of the inmate's faith.

   a.  The chaplain may request an NCIC check and documentation of such clergy person's or faith group representative's credentials.

   b.  Pastoral visits may not be counted as social visits.  They will ordinarily take place in the visiting room during regular visiting hours.]

   (1)  Minister of Record.  For this section's purposes, the minister of record is defined as that spiritual leader, clergy person, or official representative identified by the inmate and verified by the chaplain, as a minister of the inmate's religion of record.

PS 5360.08
5/25/2001
Page 12

An inmate will identify a minister of record through submitting a written request to the chaplain.  The clergy person the inmate identifies will also submit a request for consideration as the minister of record to the chaplain. Following a review of the minister's credentials and appropriate security checks, the chaplain will request that unit staff place the identified clergy person on the inmate's visitor list as the minister of record.  An inmate may only have one minister of record at a time.

The minister of record will not count against the total number of authorized social visitors an inmate is allowed to have on his or her visiting list.  Additionally, if the institution uses a point system to monitor social visits, visits from the minister of record will not be counted against the total number of visits allowed.

**(2)  Clergy**.  An ordained clergy person, religious leader or religious representative may visit at the inmate's request.  If the request to visit is initiated by a clergy person, the chaplain will confer with the inmate whether he or she agrees to the visit.  The inmate's intent provides the direction for visit accommodation.  After a review of the minister's credentials and appropriate security checks, the visit will be scheduled in the visiting room during regular visiting hours.

Visits from clergy other than the minister of record, will be in accordance with the Program Statement on Visiting Regulations, and may be counted against the total number of visits allowed.  Refer to the Special Visits section of the Program Statement on Visiting Regulations.

(3)  **Location**.  Clergy visits, including visits with the minister of record, will be accommodated in the visiting room during regularly scheduled visiting hours, and to the extent practicable, in an area of the visiting room which provides a degree of separation from other visitors.  Upon request, the visit may occur in a private visiting section contained in the visiting area if available.  If not available, the visit may be rescheduled when private accommodations can be made in the visiting room during regularly scheduled visiting hours.

The Warden may limit the number of clergy visits (minister of record and clergy) an inmate receives each month, based upon available resources.

19.   [**DIETARY PRACTICES** §548.20

   **a.  The Bureau provides inmates requesting a religious diet reasonable and equitable opportunity to observe their religious dietary practice within the constraints of budget limitations and the security and orderly running of the institution and the Bureau through a religious diet menu.  The inmate will provide a written statement articulating the religious motivation for participation in the religious diet program.]**

   (1)  **Components.**  The religious diet program will consist of two distinct components:

> ■   One component provides for religious dietary needs through self-selection from the main line, which includes a no-flesh option and access to the salad/hot bar (where the salad/hot bar is part of the Food Service Program).  In institutions where meals are served in prepared trays, local procedures will be established for providing the no-flesh component.

> ■   The other component accommodates dietary needs through nationally recognized, religiously certified processed foods with access to the salad bar only (where the salad bar is part of the Food Service Program).

   (2)  **Requests and Interviews.**  Inmates wishing to participate in the religious diet program will make the request in writing.  Chaplains will conduct an oral interview and complete the interview form within two working days of the request.  This will determine how participation in the religious diet program is best accommodated given the inmate's religious preference and beliefs.

   Inmates will review and sign a copy of the completed interview form.  Chaplains will document an inmate's refusal to sign the document.  When the interview is completed, the chaplaincy team will review the request to determine how to accommodate the inmate's stated religious dietary needs.

   (3)  **Notification.**  Inmates will be notified in writing of the accommodations for which they are approved, based on their religious dietary needs (BP-S700).  Completed forms will be placed in section 6 of the Inmate Central File.

000015

(4) **SENTRY Record.** The chaplain is responsible for entering pertinent information for each inmate approved to participate in the religious diet program into the SENTRY religious diet participant list within 24 hours of approval. Food Service will begin serving those approved for the certified processed food line normally within two days of SENTRY notification.

(5) **Monitoring.** Both chaplains and food service staff will monitor the SENTRY religious diet participant list daily to assure that all eligible inmates are served religious diet meals with minimal delay upon redesignation. Inmates who are not approved for the certified food line may request a re-interview at six-month intervals.

Chaplains will escort contract chaplains to the religious diet food preparation area randomly to monitor the preparation and serving of food items and compliance with religious dietary laws.

**[b. An inmate who has been approved for a religious diet menu must notify the chaplain in writing if the inmate wishes to withdraw from the religious diet. Approval for an inmate's religious diet may be withdrawn by the chaplain if the inmate is documented as being in violation of the terms of the religious diet program to which the inmate has agreed in writing. In order to preserve the integrity and orderly operation of the religious diet program and to prevent fraud, inmates who withdraw (or are removed) may not be immediately reestablished back into the program. The process of re-approving a religious diet for an inmate who voluntarily withdraws or who is removed ordinarily may extend up to thirty days. Repeated withdrawals (voluntary or otherwise), however, may result in inmates being subjected to a waiting period of up to one year.]**

Inmates who eat only religiously certified foods may not self-select from the main line or hot bar. Those who are observed eating from the main line may be removed temporarily from that component. In addition, those who purchase and/or consume non-certified foods from the commissary may also be temporarily removed from that component.

The Warden has authority to remove inmates from and reinstate them to the program. Ordinarily, this authority is delegated to the chaplains. Removal is not punitive in nature but provides an opportunity for the inmate and staff to reevaluate this program's appropriateness to meet the inmate's demonstrated needs. At the inmate's request for reinstatement, an oral interview will be conducted prior to reinstatement.

000016

PS 5360.08
5/25/2001
Page 15

**[c.  The chaplain may arrange for inmate religious groups to have one appropriate ceremonial or commemorative meal each year for their members as identified by the religious preference reflected in the inmate's file.  An inmate may attend one religious ceremonial meal in a calendar year.]**

Ceremonial or commemorative meals will be served in the Food Service facilities, unless the Warden authorizes otherwise.  The Food Services Department is to be the only source of procurement for all meal items.  To maintain equity in menu design, all meals must be prepared from food items on the institution master menus.

Chaplains may use a small portion of the annual Chaplaincy Services budget to acquire traditional/ritual foods to supplement the mainline foods served for the ceremonial meal.  A per capita equity formula is to be determined locally, based upon the number of inmates participating in ceremonial meals and the total amount of appropriated funds budgeted for this purpose.

To prevent waste or abuse, the total amount per faith group is to be no less than $10 nor greater than $300 for purchasing ritual/traditional foods including all shipping and handling charges.

Ritual or traditional foods must be consistent with the faith group's religious dietary laws.  Foods for ceremonial meals may not be donated or catered.

To facilitate food ordering and preparation, an Inmate Request to Staff for ritual/traditional foods will be submitted in writing to the chaplain 60 days before the ceremonial meal.  The chaplain will consult with the Food Service Administrator to develop the menu for each ceremonial or commemorative meal at least 45 days before the scheduled date of the observance.

20.  **SACRAMENTAL WINE.**  Sacramental wine is necessary for the worship of some faith groups, i.e., the ritual's requirements cannot be satisfied without the use of wine.  In those cases only, the staff or contract chaplain may consume small amounts of wine for performing the ritual.

The institution will purchase the wine using normal procurement procedures, and secure it in an appropriate area of the chapel. Bin cards must be used to assure accountability for the wine. Because wine, under any other circumstance, is a contraband item, the chaplain will inform staff of procedures for procuring, storing, and using sacramental wine.  This is accomplished through ongoing training, so that unnecessary and potentially

000017

disruptive confiscation of essential sacramental elements can be avoided.

21.  **ANNUAL REPORT.**  Each institution will submit an annual report to the Chaplaincy Services Branch, Correctional Programs Division.  The reporting year will be from October 1st through September 30th.  The institutions will receive the report forms each September from the Central Office Chaplaincy Branch.

The completed reports will be sent to the Regional Chaplaincy Administrators by the third Friday in November and the Regional Chaplaincy Administrators will forward the reports to the Central Office Chaplaincy Branch by the second Friday of December.  The Chaplaincy Services Branch will compile the information and provide a summary report to the Regional Directors by the second Friday of March.  A signed copy of the report will be retained in the chaplain's office.

22.  **INSTITUTION SUPPLEMENT.**  Each institution will develop an Institution Supplement for operating religious programs and activities.  The Institution Supplement requires the Regional Director's approval prior to issuance and include the following:

   a.  Procedures for serious illness and/or death notifications;

   b.  Procedures for religious fasts, ceremonial meals and whether appropriated funds will be used to supplement the ceremonial meals with traditional/ritual foods;

   c.  Authorized religious personal property;

   d.  Procedures for acquiring authorized religious items when no catalog vendor is available (i.e. eagle feathers);

   e.  Reasons for removal from the religious diet program and procedures for religious diet program reinstatement;

   f.  Sweat Lodge procedures, including who may participate, modesty/security requirements, and medical clearance requirements if any; and,

   g.  Procedures and limitations for pastoral visits for inmates in general population and procedures for accommodating pastoral visits for inmates in special housing or hospital units.

PS 5360.08
5/25/2001
Page 17

23. **BUREAU OF PRISONS FORMS.**  The following BP-Forms will be used in conjunction with this Program Statement:

- Questionnaire Regarding New or Unfamiliar Religious Components (MISC.100)

- Notification of Religious Diet Accommodation (BP-S700)

/s/
Kathleen Hawk Sawyer
Director

MISC-100.WPD **NEW OR UNFAMILIAR RELIGIOUS COMPONENT QUESTIONNAIRE**
CDFRM
AUG 00

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

Inmates requesting the introduction of a new component to the Religious
Service program (schedule, meeting time and space, religious items and
attire) must provide the chaplain a comprehensive description of the
religion or component following the attached outline for consideration
at the institutional, regional and national levels.

Because of the necessary review at these levels, the process may require
up to 120 days for completion.  The committee's recommendation will be
forwarded to the Warden with a copy to the Regional Director.  The
Warden's decision will be communicated by the institution chaplain.

1.  Theology and History
    A.  Basic History
    B.  Theology

2.  Requirements for Membership
    A.  Requirements
    B.  Total Membership

3.  Religious Practices
    A.  Required Daily Observances
    B.  Required Weekly Observances
    C.  Required Occasional Observances
    D.  Religious Holy Days

4.  Religious Items
    A.  Personal Religious Items
    B.  Congregate Religious Items

5.  Medical Prohibitions

6.  Dietary Standards

7.  Burial Rituals

8.  Literature
    A.  Sacred Writings
    B.  Periodicals
    C.  Resource Material

9.  Organizational Structure
    A.  Location of Headquarters
    B.  Minister or Record
    C.  Contact Office/Person

(This form may be replicated via WP)

000020

BP-S699.053 RELIGIOUS DIET INTERVIEW    CDFRM
AUG 00
U.S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

| Name of Inmate | Reg. No. | Date |
|---|---|---|
| NORWOOD, Michael | 06970-014 | 10/28/00 |

1.  What are your religious dietary needs?

KOSHER OR HALAL

2.  What are the religious reasons for your dietary needs?

THE HOLY QURIAN, BASED ON NATION OF ISLAM TEACHINGS.

3.  What does the term "certified processed foods" mean to you?

IT MEANS IT SATISFIED MY RELIGIOUS REQUIREMENTS

4.  If you believe you need to be on the certified processed food line, how do you understand "kosher" or "halal"?

SEE ANSWER TO QUESTION NE KOSHER OR HALAL ARE LAWFUL.

5.  Why can't your religious dietary needs be met by self-selecting foods from the mainline and salad/hot bar (where the salad/hot bar is part of the Food Service Program)?

USP LEWISBURG, LACKS KOSHER WASHING FACILITIES.

6.  Do you understand that you may only purchase and/or consume religiously certified foods from the Commissary, if you are approved for the certified food line?

If the Company meets my religious Standard, my answer is: Yes.

These answers accurately reflect my religious dietary needs.

| Official Religious Preference | ~~Muslim~~ NATION OF ISLAM |
|---|---|
| Signature of Inmate | Reg. No. 06970-014 |
| Signature of Chaplain | Date 10-28-00 |
| Religious Diet Accommodation: ✓ Self-selected main line; | ✓ Certified, processed food line |

Grand Copy - Inmate Central File; Copy - Chaplaincy File

(This form may be replicated via WP)

000021

BP-S700.053 **NOTIFICATION OF RELIGIOUS DIET ACCOMMODATION**  CDFRM
AUG 00
**U.S. DEPARTMENT OF JUSTICE**                        FEDERAL BUREAU OF PRISONS

| Name of Inmate NORWOOD, Michael | Register Number 06970-014 |
|---|---|
| Unit 1 - A-228 | Religious Preference NATION |
| Date of Interview 10/28/00 | Today's Date 10/31/00 |

You were interviewed for participation in the Religious Diet Program.  Upon review of the responses given in the interview questionnaire, it was determined that you are:

✓   Approved to participate in the mainline component of Religious Diet Program, which includes access to the salad/hot bar only (where the salad/hot bar is part of the Food Service Program).

___   Approved to certified, processed food component of Religious Diet Program, which includes access to the salad bar only (where the salad bar is part of the Food Service Program).

If you are not satisfied with this decision, you may appeal through the administrative remedy process.

| Chaplain's Signature | Date 10/31/00 |
|---|---|

000022

# FROM GOD IN PERSON
## MASTER FARD MUHAMMAD

By

# ELIJAH MUHAMMAD
Messenger of Allah



Elijah Muhammad

# HOW TO EAT TO LIVE

# The Teachings of Muhammad

For more than 30 years, Messenger Elijah Muhammad has been teaching the so-called Negroes of America on the proper foods to eat to improve their mental power, physical appearance, for prevention of illness, curing of ailments and prolonging life.

Before it became a fad, Messenger Muhammad advocated eating whole wheat and staying away from bleached, white enriched flour. He has taught and maintained fats should be reduced and eliminated from the diet. He has warned about the dangers of eating from cans and wax cartons. He has cautioned the so-called Negroes to take better care in selecting food to eat.

Mr. Muhammad has stated the so-called Negro should eat the young, fresh green vegetables. He has stated the lima bean, black-eyed peas and other field beans do not have food values good for the body and that they are very hard and damaging to the digestive tract.

For more than 30 years, the Muslim home has stressed the baking of foods and not frying. He has cautioned his followers to be conscious of weight. Penalties are exacted from Muslims found overweight.

All of Messenger Muhammad's teaching on foods and weight have been studied by white scientists, doctors and dieticians. Finally, 1959, actuaries released new average weight charts for men and women. It was no mere coincidence that their findings coincide with what Messenger Muhammad had been teaching. It was practically a verbatim transcript of the papers they confiscated when the federal government arrested him in 1942.

This was followed up with a featured story on weight in the "U.S. News & Word Report," Nov. 2, 1959, which was condensed in "Reader's Digest," Feb, 1960. Their story, too, followed what Messenger Muhammad has been teaching for 30 years, that is, except the portions which advise eating pork, "Coronet" magazine, also in Feb., 1960, published an article on weight and new weight charts, according to the plan of Mr. Muhammad. And, in the April 11, 1960 edition, the "U.S. News & World Report" again reported a detailed account on the foods to eat. As one Muslim said, "They really listened to Mr. Muhammad, but they mixed it up and added to it." Everyone would do well to read this book by Mr. Muhammad on the proper foods to eat. His advice adds to your life.

****

As Truth cannot be purchased, this book is a gift to you in exchange for your contribution which will be used to build a much needed educational center for Black men in Chicago.

May God bless every purchaser of this book.

*(Reprinted from original cover, 1972)*

This re-print is under the auspices of Minister Louis Farrakhan and the Nation Of Islam, National Center, 7351 So. Stony Island Ave., Chicago, IL 60620  1-800-327-8273

**U.S. Department of Justice**

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: **NORWOOD, MICHAEL**                    **06970-014**                    ?                    USP LEW

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A—REASON FOR APPEAL**    The Regional Director's response to the BP10 defies logic, violates BOP policy governing Religious Practices and Beliefs, and is racist in kind. Other Muslim and Jewish prisoners here at Lewisburg continue to have their religious dietary needs met by affording them access to the commonfare diet, while I am denied same for no other reason than my support of the Honorable Louis Farrakhan. The regional director claims that I have not established that my religion prohibits me from using thoroughly cleaned utensils even if those utensils were used to prepare pork at prior meals. I invite the Central Office's attention to "HOW TO EAT TO LIVE", by the Honorable Elijah Muhammad, which contains the dietary laws of members of the Nation of Islam. At page 11, ¶4; page 63, ¶8; page 69, ¶2; page 91, ¶1, page 95, ¶2 & 3; page 105, ¶2; and page 17, ¶3, there are clear references that NOI members are to eat only halal or orthodox kosher food. In addition, stern warnings are given to avoid even incidental contact with the forbidden swine. This can only be accomplished by eating commonfare meals. Commonfare meals are prepared with disposable utensils, thereby eliminating even the possibility of incidental exposure to the forbidden swine through contaminated utensils. This issue has already been decided in favor of Jewish prisoners by the courts. See Kahane v. Norman Carlson, Director of Bureau of Prisons.

I demand a commonfare diet immediately. I have exhausted my administrative remedies.

**1-10-01**
DATE                                                                    SIGNATURE OF REQUESTER

**Part B—RESPONSE**

DATE

GENERAL COUNSEL

THIRD COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE                    CASE NUMBER: _____

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____                    **000025**

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT: _____

DATE

**Administrative Remedy No. 226674-A1**
**Part B - Response**

You appeal the Warden's response to your Request for
Administrative Remedy in which you contend your religious dietary
needs cannot be satisfied by self-selecting items from the
mainline.  Specifically, you claim you must use utensils which
have not been contaminated by pork products.  You request to be
immediately placed on the common fare diet.

With the recent implementation of a no-flesh option on the noon
and evening meals, the religious dietary practices of many
inmates can be accommodated by self-selection from the mainline
fare.  A uniform religious diet interview process was also
established to determine an inmate's religious motivation for
participation in the alternate diet program.  The alternate diet
program consists of two distinct components.  The first component
provides for religious dietary needs through self-selection from
the mainline, including a no-flesh option and access to the
salad/hot bar.  The second component accommodates dietary needs
through religiously certified processed foods without access to
the hot bar.

You were recently interviewed to determine how participation in
the newly implemented alternate diet program could best be
accommodated given your religious preference and beliefs.  On the
basis of the responses you gave during the interview, it was
determined that your religious dietary needs can be best met
through mainline self-selection, including the no-flesh option
and access to the salad/hot bar.  Your dietary accommodation has
been determined by your stated need, not by your religious
affiliation.  On November 1, 2000, you were determined to be
ineligible for the certified processed food line.  You may,
however, request a re-interview at six-month intervals.

Based on the above, we find your religious dietary practices are
being accommodated through the self-selection mainline fare.  The
common fare diet has been replaced by the alternative diet
program outlined above.

Based on the above, your appeal is denied.


_Feb. 26, 2001_
_____
Date

_____
Harrell Watts, Administrator
National Inmate Appeals

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

---

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

From: NORWOOD, MICHAEL                  04471-714

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A—REASON FOR APPEAL**

The warden answered the BP-9 by stating that my removal from the common-fare list was based on my stated need. The warden's answer is a sham. My BP-9 clearly states that my need for a commonfare list is based on the fact that I cannot eat from any utensils used previously to prepare or serve pork. Obviously, my religious dietary needs cannot be satisfied or self-selecting items from the mainline because USP Lewisburg does not have common kitchen facilities in its kitchen, an issue which I made clear when interviewed by the chaplin regarding my participation in the commonfare program.

I demand a commonfare diet immediately.

12-5-00

| DATE | SIGNATURE OF REQUESTER |

**Part B—RESPONSE**


| DATE | REGIONAL DIRECTOR |

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

THIRD COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE                  CASE NUMBER: _____

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

000027

SUBJECT: _____

NORWOOD, MICHAEL
Reg. No. 06970-014
Appeal No. 226674-R1
Page One

---

### Part B - Response

In your appeal, you claim that your religious dietary needs
cannot be satisfied by self-selecting items from the mainline.
You claim that you need to use utensils not contaminated by pork
products.  You request that USP Lewisburg provide you with a
Common Fare diet immediately.

Our investigation revealed that the USP Lewisburg chaplain
interviewed you in October 2000.  At that time you were unable to
articulate your need for Certified Processed foods.  Based on
your answers and stated needs, it was determined that your
dietary needs can be met by self-selection from the No-Flesh
component of the mainline.  You have not established that your
religion prohibits you from using thoroughly cleaned utensils
even if those utensils were used to prepare pork at prior meals.
Your appeal is denied.

If you are dissatisfied with this response, you may appeal to the
General Counsel, Federal Bureau of Prisons.  Your appeal must be
received in the Administrative Remedy Section, Office of General
Counsel, Federal Bureau of Prisons, 320 First Street, N.W.,
Washington, D.C.  20534, within 30 calendar days of the date of
this response.

Date: January 4, 2001

DAVID M. RARDIN
Regional Director

000028

U.S. DEPARTMENT OF JUSTICE     **REQUEST FOR ADMINISTRATIVE REMEDY**
Federal Bureau of Prisons

---

*Type or use ball–point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | NORWOOD, MICHAEL | 06970-014 | 1 | LEV |
|-------|------------------|-----------|---|-----|
| | LAST NAME. FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A– INMATE REQUEST**

The response to the BP 8 is outrageous. I have qualified for the commonfare
diet at every BOP facility in which I have been confined, based on the fact
that I am Muslim, and the fact that the Holy Qu'ran forbids me from eating
pork or off any utensils used to prepare pork. Furthermore my investigation
reveals that other Muslim prisoners continue to have their right to a
commonfare diet honored, while I am being denied a commonfare diet solay
because I am part of the Nation of Islam. I note that the chaplin's action
comes directly after the Honorable Louis Farrakhan's successful convening
of the Million Family March on October 16, 2000. My rights under the
Religious Freedoms and Restoration Act of 1993 have been violated. Also,,
28 C.F.R. § 541.12 and BOP policy governing Religious Beliefs and Practices
have been violated. Accordingly, I demand a commonfare diet.

| 11-9-00 | |
|---------|---|
| DATE | SIGNATURE OF REQUESTER |

**Part B– RESPONSE**

Rec'd 11/14/00

| 11/29/00 | |
|----------|---|
| DATE | WARDEN OR REGIONAL DIRECTOR |

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

FIRST COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE    CASE NUMBER: 234674-F1

------

CASE NUMBER: _____

**Part C– RECEIPT**

000029

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

RECIPIENT'S SIGNATURE (STAFF MEMBER)

BP-229(13)

Admin. Remedy No.: 226674-F1
Part B - Response

## ADMINISTRATIVE REMEDY RESPONSE

In your Request for Administrative Remedy, you allege that you were treated unfairly as a member of the Nation of Islam by your removal from the Common Fare diet. You claim that you have been qualified for the common fare diet at every other facility. You further contend that your religious rights under BOP policy and the Religious Freedom and Restoration Act have been violated. You, therefore, demand to be restored to the Common Fare program.

In response to the issues which you have raised, please be advised that effective November 1, 2000, a new "alternative diet" program was implemented which replaced what had been known for years as the "Common Fare" program. The new program places the burden on the individual to "self-select" from those foods which they may eat . A new "no flesh" option has been introduced to accomplish this selection. Also, per direction from the Central Office Religious Services branch, a list of questions was forwarded to each Religious Services department in the Bureau of Prisons. Based upon the stated need by each individual, a determination is made to efficiently meet that religious dietary need. An individual may only request reconsideration after a six month period has elapsed.

Your dietary accommodation has been determined by your stated need; not by your religious affiliation. Unlike the old "Common Fare" program, where religious "motivation" was the standard, the alternative diet is based upon individual stated need. As you stated it, your dietary needs can be met by self-selection. You are, therefore, approved for the self-selection component ("no flesh") of the dietary program.

Based on the above, your request for relief is DENIED. According to the program guidelines, you may request to be interviewed again six (6) months subsequent to your previous interview. If you are dissatisfied with this response, you may appeal to the Regional Director, United States Federal Bureau of Prisons, Northeast Regional Office, United States Customs House- Seventh Floor, Second and Chestnut Streets, Philadelphia, PA 19106, within twenty (20) calendar days from the date of this response.

11/29/00
Date

Donald Romine, Warden

ATTACHMENT #1
LEW 1330.16

## INFORMAL RESOLUTION ATTEMPT

In accordance with Program Statement 1330.7, _Administrative Remedy Procedure for Inmates_, this form will serve as documentation by the respective staff member and his unit manager to indicate an informal attempt to resolve the complaint of the following inmate:

NAME: _Norwood_

FORM TO INMATE: _11/1/00_    Reg. No. _06970-014_
                (Date)      STAFF _____    (Name)    (Unit)

A BP-9 WILL NOT BE ACCEPTED WITHOUT THIS COMPLETED FORM ATTACHED
(Pg 1 & Pg 2).

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Nature of Complaint (to be completed by inmate):

I have been removed from the Common-Fare Religious diet. I submit that the Chaplin's Actions violate my rights under the religious freedoms and Restoration Act. I am a Muslim. I do not eat pork or off any eating utensils used to prepare pork. This is a requirement of my religion, Islam. Lewisburg does not have kosher washing facilities... for utensils. Accordingly, I demand to be placed on the Common-Fare Diet. See Attached Notification from Chaplin.

My rights under the Religious Freedoms Restoration Act of of 1993 are being Violated. I am hereby exhausting my Administrative Remedies under the Prison Litigation Reform Act. I have stated a valid cause act action at law. See Moorish Science Temple of America v. Smith, 693 F.2d 987, 990 (2nd Cir. 1982)

000031

BP-3700.053 **NOTIFICATION OF RELIGIOUS DIET ACCOMMODATION**   CDFRM
AUG 00

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| Name of Inmate  NORWOOD, Michael | Register Number  06970-014 |
|---|---|
| Unit  1-A-228 | Religious Preference  NATION |
| Date of Interview  10/28/00 | Today's Date  10/31/00 |

You were interviewed for participation in the Religious Diet Program.  Upon
review of the responses given in the interview questionnaire, it was determined
that you are:

✓    Approved to participate in the mainline component of Religious Diet
     Program, which includes access to the salad/hot bar only (where the
     salad/hot bar is part of the Food Service Program).

_____    Approved to certified, processed food component of Religious Diet
         Program, which includes access to the salad bar only (where the salad
         bar is part of the Food Service Program).

If you are not satisfied with this decision, you may appeal through the
administrative remedy process.

| Chaplain's Signature | Date  10/31/00 |
|---|---|

Record Copy - Inmate Central File; Copy - Chaplaincy File; Copy - Inmate
  This form may be replicated via WP.

000032

DEC-20-01 THU 11:47 AM                                                              P. 2

IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

Michael Norwood,                    )
      Plaintiff                     )
                                    )        CV-01-1005 (M.D. Pa)
v.                                  )
                                    )
                                    )
Donald Romine,                      )
      Defendant                     )
                                    )

## DECLARATION OF D. ROMINE

I, D. Romine, hereby state:

1.      I understand that I have been named as a defendant in the above referenced civil case in which USP Lewisburg inmate Michael Norwood, Reg. No. 06970-014, complains that he is not approved for the Bureau of Prisons' religious alternative diet program. Inmate Norwood states that he is a follower of the Nation of Islam (NOI) and claims that he must be provided with disposable eating utensils in order to follow the dietary laws of his faith.

2.      In my capacity as Warden of USP Lewisburg, I have no involvement in the day to day decisions of approving inmates for the religious diet program. The evaluation and placement of inmates in the religious diet program is made by the institution's Religious Services Department as the chaplains in that department are familiar with the religious requirements of different faith groups.

I hereby state under penalty of perjury pursuant to the provisions of 28 U.S.C. § 1746 that the above is accurate to the best of my knowledge.


_____                    _11 - 16 - 01_
Donald Romine                                     Date
Warden
United States Penitentiary
Lewisburg, PA 17847


000033

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL NORWOOD,                    :
            Plaintiff              :
                                   :
        v.                         :    Civil No. 1:CV-01-1005
                                   :    (Caldwell, J.)
DONALD ROMINE, Warden,             :    (Smyser, M.J.)
            Defendant              :

CERTIFICATE OF SERVICE BY MAIL

        The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

        That on December 21, 2001, she served a copy of the attached

**RECORD TO BRIEF IN SUPPORT OF DEFENDANT ROMINE'S
MOTION TO DISMISS
AND FOR SUMMARY JUDGMENT**

by placing said copies in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Williamsport, Pennsylvania.

Addressee:

Michael Norwood
Reg. No. 06970-014
U.S. Penitentiary
P.O. Box 1000
Lewisburg, PA 17837

MICHELE E. LINCALIS
Paralegal Specialist