UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL NORWOOD                :  CIVIL NO: 1:CV-01-1005
    Plaintiff,         :
                       :  (Judge Caldwell)
  v.                   :
                       :  (Magistrate Judge Smyser)
DONALD ROMINE,                 :
    Defendant          :

**REPORT AND RECOMMENDATION**

FILED
HARRISBURG, PA

FEB 12 2002

MARY E. D'ANDREA, CLERK
PER_____ DEPUTY CLERK

    The plaintiff, a federal prisoner proceeding *pro se*, commenced this action by filing a complaint on June 6, 2001. On June 11, 2001, the plaintiff filed an amended complaint. The plaintiff claims that the defendant's failure to provide him a diet consistent with his religious beliefs violates his rights under the First Amendment and the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb, et seq. The plaintiff is seeking monetary damages and injunctive relief.

    On December 10, 2001, the defendant filed a motion to dismiss and for summary judgment. (Doc. 14). The motion has

been briefed by the parties and is ripe for disposition. For the reasons that follow, it will be recommended that the motion be denied.

Since the defendants have presented documents outside the pleadings, we will consider the motion as a motion for summary judgment.

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

2

> The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The moving party can discharge that burden by "'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex*, *supra*, 477 U.S at 325.

An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A material factual dispute is a dispute as to a factual issue that will affect the outcome of the trial under governing law. *Anderson*, *supra*, 477 U.S. at 248. In determining whether an issue of material fact exists, the court

must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

The defendant contends that he is entitled to summary judgment on the plaintiff's First Amendment free exercise claim.

The plaintiff, a prisoner confined at the United States Penitentiary at Lewisburg, Pennsylvania (USP Lewisburg), is a member of the Nation Of Islam. *Amended Complaint* at 2. He alleges that under the dietary laws of the Nation Of Islam he must avoid pork, and that eating food that has been prepared using utensils that have previously been used to serve or prepare pork is a violation of the dietary laws of the Nation Of Islam. *Id.* The plaintiff alleges that the religious diet offered by USP Lewisburg (referred to by the plaintiff as the "commonfare diet") would satisfy the dietary demands of his faith. *Id.* He further alleges that while Sunni Muslim prisoners at USP-Lewisburg who have requested the "commonfare

4

diet" have been accommodated, Muslim prisoners who are members of the Nation of Islam who have requested the "commonfare diet" have not been accommodated. *Id*.

According to the Declaration of Edward Roberts, Supervisory Chaplain at USP-Lewisburg, the plaintiff submitted a written request to the Religious Services staff requesting a "Kosher or Halal" diet on October 28, 2000. *Doc. 18* at 2. In that request the plaintiff stated the reasons for requesting such a diet were "The Holy Quoran based on Nation Of Islam teachings." *Id*. The plaintiff was then interviewed by a member of the religious services staff who is an Imam, a leader in the Muslim Faith. *Id*. The Imam concluded that plaintiff's dietary needs could be satisfied by participation in the mainline component of the Religious diet, which means that the plaintiff can select from several food choices including the main steamline entree, an alternative no-flesh menu or a well stocked salad bar. *Id*. The reason given for denying the plaintiff a Kosher of Halal diet was that the Nation Of Islam has no requirement that adherents eat with disposable utensils

5

and does not mandate any special cleaning requirement for eating utensils. *Id*.

The plaintiff filed an "Informal Resolution Attempt" on November 1, 2000, challenging the Chaplain's's decision. *Doc. 18* at 31. He stated: "I am Muslim. I do not eat pork or off any eating utensils used to prepare pork. This is a requirement of my religion, Islam." *Id*. In his "Request For Administrative Remedy" filed on November 9, 2000, the plaintiff stated: "the Holy Qu'ran forbids me from eating pork or off any utensils used to prepare pork. Furthermore my investigation reveals that other Muslim prisoners continue to have their right to a commonfare diet honored." *Id*. at 29. He claimed that he was denied a special diet solely because he was a "part of the Nation of Islam." *Id*. He raised similar agreements in his appeal to the Central Office. The plaintiff was denied administrative relief at all levels.

The plaintiff named the warden of USP Lewisburg as the sole defendant in this action. The defendant argues that he

6

had no personal involvement in the decision to deny the plaintiff a special religious diet and he therefore cannot be liable for any alleged constitutional violation. In his Declaration, the defendant states: "In my capacity as Warden of USP Lewisburg, I have no involvement in the day to day decisions of approving inmates for the religious diet program. The evaluation and placement of inmates in the religious diet program is made by the institution's Religious Services Department as the chaplains in that department are familiar with the religious requirements of different faith groups." *Id.* at 33.

The plaintiff asserts, however, that the defendant was indeed personally involved in the matter as he denied the plaintiff's request for an administrative remedy. In support of this assertion the plaintiff points to an Administrative Remedy Response dated November 29, 2000 and signed by the defendant. *Id.* at 30. In that response, the defendant explained that effective November 1, 2000, a new "alternative diet program" was implemented at USP Lewisburg which placed the

7

burden on inmates to self-select foods which they may eat. *Id.* The Warden stated: "As you stated it, your dietary needs can be met by self-selection. You are, therefore, approved for the self-selection component ('no flesh') of the dietary program." *Id.*

"It is, of course, well established that a defendant in a civil rights case cannot be held responsible for a constitutional violation which he or she neither participated in or approved . . . There is no vicarious, respondeat superior liability" in a civil rights case. *C.H. Ex. Rel. Z.H. Oliva*, 226 F.3d 198, 201-202 (3rd Cir. 2000). However, "a prison official with supervisory authority may be liable for conduct causing a constitutional deprivation if he knows about the conduct and facilitates it, approves it, condones it, or turns a blind eye to it." *Haberstick v. Nesbitt*, 1998 WL 472447, *4 (E.D.Pa. July 29, 1998).

The defendant asserts that by merely addressing the plaintiff's grievance concerning the diet issue, he cannot be

8

said to have had any personal involvement in the alleged constitutional violation. In support of this proposition, the defendant cites this court's decision in *Hinebaugh v. Davis*, No. 3:CV-99-1647 (M.D. Pa. Sept. 2, 2000)(Conaboy, J.). In *Hinebaugh*, Judge Conaboy held that rejection of administrative remedies by Bureau of Prisons regional officials did not constitute personal involvement in constitutional misconduct. The court stated: "To hold otherwise would unfairly expose such officials to liability in countless inmate litigation matters and undermine the exhaustion of administrative remedies requirement." *Hinebaugh*, slip op. at 9.

*Hinebaugh*, however, addressed the issue of whether Bureau of Prisons regional officials could be said to be involved in an alleged constitutional violation merely by addressing a grievance appeal. The case did not address the issue of whether a prison warden had sufficient knowledge of an alleged constitutional violation when he ruled on a grievance alleging the violation. That issue was addressed by the court in *Goodman v. Carter*, 2001 WL 755137 (N.D. Ill. July 2, 2001).

9

In *Goodman*, the plaintiff was a prisoner who complained, *inter alia*, that he was denied the vegetarian diet which was mandated by his religion. He sued various prison officials including the warden. The warden sought summary judgment in his favor on the theory that "the mere act of denying a grievance does not provide a basis for liability under § 1983." *Id*. at *4. The court rejected that argument recognizing that under some circumstances a prison official's disregard of a grievance could subject him to liability. The court stated:

> [*Vance v. Peters*, 97 F.3d 987, 993 (7th Cir.1996), *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir.1995) and *Black v. Lane*, 22 F.3d 1395, 1401 (7th Cir.1994)] accept that a prison official's disregard of a grievance can subject him or her to liability. Not that liability necessarily follows; it may not have been that official's responsibility to deal with the problem, or the official may have believed that it was being properly handled by subordinates, absolving him or her of the required mental state of "deliberate indifference." And, of course, if the plaintiff's injury is complete at the time the grievance is filed, denying the grievance or failing to respond to it cannot be grounds for liability because it caused no injury.... Where a defendant has the direct responsibility of reviewing and responding to grievances, however, denial of a grievance can constitute his "express consent" to the

10

>     perpetuation of the conditions complained of
>     in the grievance.

*Id.* at *4-5. Similarly, in *Majid v. Wilhelm*, 110 F.Supp.2d 251 (S.D. N.Y. 2000), the court denied summary judgment to a prison supervisory official in a religious diet case. The official argued that he had no personal involvement in denying the prisoner his religious diet other than sending the prisoner a memo explaining the prison's policy on meatless trays. *Id.* at 257. The court rejected this argument noting that "personal involvement ... may be shown by evidence that ... the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Id.* at 257 (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). *See also Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996)("[A] prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition.").

11

The defendant's response to the plaintiff's request for an administrative remedy dated November 29, 2000, demonstrates that the defendant was aware that the plaintiff was denied the type of diet that he requested. *Doc. 18* at 30. Accordingly, granting summary judgment in favor of the defendant on the theory of lack of personal involvement would be improper.

The defendant also argues that the plaintiff's First Amendment claim must fail since the plaintiff's religious group, the Nation Of Islam, does not require the restrictive diet that the plaintiff seeks. The defendant contends that according to the tenets of the plaintiff's own religious group, his religious dietary needs can be satisfied by choosing from the mainline entree, the no flesh option or the salad bar.

The plaintiff asserts that his religion requires him to eat a Kosher or Halal diet. He claims that Nation Of Islam "members are to eat only halal or orthodox kosher food" and "avoid even incidental contact with the forbidden swine." *Doc. 18* at 25. Given the plaintiff's insistence that his version of

12

Islam requires a Kosher or Halal diet, there is a factual dispute as to whether members of the Nation Of Islam are required to eat such a diet. However, that factual dispute is not material because it is not this court's function nor the function of a factfinder to determine wether the plaintiff or the defendant more correctly perceives the commands of the Nation of Islam. See *Thomas v. Review Bd. of Indiana Employment Security Div.*, 450 U.S. 707, 716 (1981)("[I]t is not within the judicial function and judicial competence to inquire whether the petitioner or his fellow worker more correctly perceived the commands of their common faith."). "Intrafaith differences . . . are not uncommon among followers of a particular creed, and the judicial process is singularly ill equipped to resolve such differences in relation to the Religion Clauses." *Id.* at 715. "Courts are not arbiters of scriptural interpretation." *Id.* at 716. *See also Hernandez v. Commissioner*, 490 U.S. 680, 699 (1989)("It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigant's interpretations of those creeds.").

AO 72A
(Rev.8/82)

Accordingly, the issue is not whether a Kosher or Halal diet is part of the requirements of the Nation Of Islam, but rather whether plaintiff's belief that a Kosher or Halal diet is necessary is "(1) sincerely held, and (2) religious in nature, in the [plaintiff's] scheme of things." *Africa v. Pennsylvania* 662 F.2d, 1025, 1029-1030 (3rd Cir. 1981). The court cannot on the instant record hold as a matter of law that the plaintiff's belief is not sincerely held or religious in nature.

The inquiry, however, does not end at whether the plaintiff's request for a particular diet is afforded First Amendment protection. Assuming that it is, the prison may still deny that request if such a denial is reasonably related to legitimate penological interests. In *DeHart v. Horn*, 227 F.3d 47, 51 (3rd Cir. 2000), the Court of Appeals for the Third Circuit recognized that this inquiry is governed by the standards set forth by the Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987). The Court noted that "when a prison regulation impinges on an inmates' constitutional rights, the

14

regulation is valid if it is reasonably related to legitimate penological interests." *DeHart, supra,* 227 F.3d at 51 (*quoting Turner*, 482 U.S. at 89). Determining whether a prison regulation which impinges on an inmates constitutional rights is reasonable involves the consideration of four factors. *Waterman v. Farmer*, 183 F.3d 208, 212 (3rd Cir. 1999). "First, there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it, and this connection must not be so remote as to render the policy arbitrary or irrational." *DeHart, supra*, 227 F.3d at 51 (*quoting Waterman, supra*, 183 F.3d at 213). The second factor to be considered is whether there are alterative means for the prisoner to exercise the "circumscribed right." *Id*. Thirdly, the costs of accommodating the prisoner's exercise of his right on the prison, must be considered. *Id*. Lastly, it must be considered whether "there are alternatives to the regulation that fully accommodate the prisoner's rights at de minimis cost to valid penological interests." *Id*.

15

There is not enough information contained in this summary judgment record to engage in a meaningful analysis of whether denying the plaintiff the religious diet he requested was "reasonably related to legitimate penological interests." With regard to the first factor, the defendant has not put forward the "legitimate governmental interest" relied upon to justify the denial of the diet.  Similarly, there is no evidence of record as to whether the plaintiff has alternative means available to him to practice his religion.  With regard to the third and fourth factors that we need to consider, there has been no evidence offered as to the costs of providing such an accommodation to the plaintiff or whether there are any alternatives that would accommodate him.[1]  Accordingly, the defendant should not be granted summary judgment on the plaintiff's First Amendment free exercise claim.[2]

---

[1] While the defendant argues in his brief that the plaintiff could meet his religious needs by eating off the salad bar or the "no flesh" option, there is no evidence of record, such as an affidavit, detailing these options.

[2] It should also be noted that the defendant has moved for summary judgment in his official capacity based on sovereign immunity.  The plaintiff concedes in his brief, however, that the defendant is being sued only in his individual capacity. The
(continued...)

16

The defendant did not address the plaintiff's claim under the Religious Freedom Restoration Act (RFRA). We note that in *City of Boerne v. Flores*, 521 U.S. 507 (1997), the United States Supreme Court held that RFRA was unconstitutional as applied to the states under Section 5 of the Fourteenth Amendment. The United States Court of Appeals for the Third Circuit has assumed, without deciding, that RFRA is constitutional as applied to the federal government. *See Adams v. C.I.R.*, 170 F.3d 173, 175 (3d Cir. 1999), *cert. denied*, 528 U.S. 1117 (2000).

Based on the foregoing, it is recommended that the defendants' motion to dismiss and for summary judgment (Doc. 20) be denied and that the case be remanded to the undersigned for further proceedings.

J. Andrew Smyser
Magistrate Judge

Dated: February 12, 2002

---

[2](...continued)
sovereign immunity argument is therefore moot.

AO 72A
(Rev.8/82)

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL NORWOOD | : CIVIL NO: 1:CV-01-1005 |
|     Plaintiff, | : |
| | : (Judge Caldwell) |
| v. | : |
| | : (Magistrate Judge Smyser) |
| DONALD ROMINE, | : |
|     Defendant | : |

FILED
HARRISBURG, PA

FEB 12 2002

MARY E. D'ANDREA, CLERK
PER_____
    DEPUTY CLERK

### NOTICE

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3 of the Rules of Court, M.D.Pa., which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. §636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition **within ten (10) days** after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                                      _____
                                                      J. Andrew Smyser
                                                      Magistrate Judge

Dated: February 12, 2002.

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

* * MAILING CERTIFICATE OF CLERK * *

February 12, 2002

Re: 1:01-cv-01005    Norwood v. Romine

True and correct copies of the attached were mailed by the clerk to the following:

Michael Norwood
USP-LEW
U.S. Penitentiary at Lewisburg
06970-014
P.O. Box 1000
Lewisburg, PA   17837

Joseph J. Terz, Esq.
Office of the US Attorney
316 Federal Building
240 West Third Street
Williamsport, PA   17703

```
cc:
Judge                         (/)           ( ) Pro Se Law Clerk
Magistrate Judge              (/)           ( ) INS
U.S. Marshal                  (/)           ( ) Jury Clerk
Probation                     ( )
U.S. Attorney                 ( )
Atty. for Deft.               ( )
Defendant                     ( )
Warden                        ( )
Bureau of Prisons             ( )
Ct Reporter                   ( )
Ctroom Deputy                 ( )
Orig-Security                 ( )
Federal Public Defender       ( )
Summons Issued                ( ) with N/C attached to complt. and served by:
                                  U.S. Marshal ( )   Pltf's Attorney ( )
Standard Order 93-5           ( )
Order to Show Cause           ( ) with Petition attached & mailed certified mail
                                  to: US Atty Gen  ( )   PA Atty Gen ( )
                                      DA of County ( )   Respondents ( )
Bankruptcy Court              ( )
Other  keep clip              (/)
```

MARY E. D'ANDREA, Clerk

DATE: _____2/12/02_____   BY: ___/s/ STB___
                                  Deputy Clerk