TAM:JJT:mel:2001V01054

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL NORWOOD,                :
          Plaintiff             :
                                :
     v.                         :  Civil No. 1:CV-01-1005
                                :  (Caldwell, J.)
DONALD ROMINE, Warden,          :  (Smyser, M.J.)
          Defendant             :

**BRIEF IN SUPPORT OF DEFENDANT ROMINE'S**
**MOTION FOR SUMMARY JUDGMENT**

     Norwood initiated this <u>Bivens</u> action on June 6, 2001. On June 11, 2001, he amended his complaint against former Warden Donald Romine, complaining that he was not approved for the Bureau of Prisons' religious alternative diet program at USP Lewisburg. Specifically, Norwood states that he is a follower of the Nation of Islam and claims that he must be provided with disposable eating utensils in order to follow the dietary laws of his faith. He claims the defendant's failure to provide him a diet consistent with his religious beliefs violates his rights under the First Amendment and the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, <u>et seq.</u> He requests injunctive and monetary relief.

     On March 27, 2002, a motion to dismiss and for summary judgment filed on behalf of defendant Romine was denied by the District Court and the matter was remanded to the Magistrate Judge. This brief is submitted in support of defendant Romine's

motion for summary judgment filed on November 29, 2002. As set forth below, the motion should be granted as Warden Romine is entitled to qualified immunity and because RFRA does not create a separate cause of action for money damages.

## Statement of Facts

Bureau of Prisons' policy as codified at 28 C.F.R. § 548.10(a), states:

> The Bureau of Prisons provides inmates of all faith groups with reasonable and equitable opportunities to pursue religious beliefs and practices, within the constraints of budgetary limitations and consistent with the security and orderly running of the institution and the Bureau of Prisons.

Bureau of Prisons' policy regarding religious dietary practices states:

> The Bureau provides inmates requesting a religious diet reasonable and equitable opportunity to observe their religious dietary practice within the constraints of budget limitations and the security and orderly running of the institution and the Bureau through a religious diet menu. The inmate will provide a written statement articulating the religious motivation for participation in the religious diet program.

Bureau of Prisons' Program Statement 5360.08, Religious Beliefs and Practices, Page 13 (see Record to Brief in Support of Defendant Romine's Motion for Summary Judgment ("Record") at 15); 28 C.F.R. 548.20(a)[1].

---

[1] The words "religious diet" and "common fare" are interchangeable.

2

On October 28, 2000, Norwood submitted a written request to USP Lewisburg Religious Services Department staff asking for a "Kosher or Halal" diet. In response to a question asking, "What are the religious reasons for your dietary needs?," Norwood responded, "The Holy Quoran based on Nation of Islam Teachings." (Record, p. 2, ¶ 5 and p. 21.)

Norwood was interviewed by Religious Services' staff member Abdulfattah Jamiu, on October 31, 2000.[2] Chaplain Jamiu concluded that Norwood's dietary needs could be satisfied merely by his participation in the "mainline component" of the religious diet. That is, Norwood could self-select from several food choices offered by USP Lewisburg Food Service--i.e., the main steam line entree, an alternative no-flesh menu, or select from a well stocked salad bar, which is available every day. (Record at 2, ¶ 5.) This decision was documented on Norwood's religious interview form. (Record at 32.)

The determination that Norwood did not require the certified (Halal or Kosher) processed food component of the religious diet was made on the basis of Norwood's self-stated membership with the Nation of Islam and his adherence to Nation of Islam Teachings. (Record at 2, ¶ 6.) Nation of Islam dietary requirements are set forth in the book *How to Eat to Live* by

---

[2] Chaplain Jamiu is an Imam, or religious leader, in the Muslim Faith.

3

Elijah Muhammad, the founder to the Nation of Islam. According to the founder of the religious group to which Norwood claims membership, there is no requirement for disposable eating utensils, or any instructions for special cleaning requirements for eating utensils. (Record at 2, ¶ 6, and pp. 23-24.)

Norwood filed administrative remedies concerning his request for disposable utensils and was denied relief at the institutional, Regional, and Central Office levels. (Record at 25-31.) In response to his administrative remedies, Norwood was informed that his religious dietary needs were determined based on the responses he provided during his interview with Religious Services staff. He was also informed that he may re-apply for consideration for the religious alternative diet. (Record at 2, ¶ 7.) Norwood did not re-apply. (Id.) However, on March 23, 2002, Norwood was placed on the religious alternative diet. (Id. at 34, ¶2, and p. 35.)

Warden Romine is not involved in the day to day evaluation of inmates for placement on the Bureau of Prisons' religious alternative diet program. (Record at 33, ¶ 3.) Rather, the evaluation and placement of inmates in the religious diet program is the responsibility of the Religious Services Department. (Id.) Therefore, defendant Romine had no input in the decisions of how to accommodate Norwood's stated religious dietary needs.

## Questions Presented

A. Should summary judgment be granted to Warden Romine as he is entitled to the defense of qualified immunity?

B. Should summary judgment be granted to Warden Romine as the Religious Freedom Restoration Act does not create a separate cause of action for money damages?

## Argument

**A. Warden Donald Romine is Entitled to Qualified Immunity.**

It is well-settled that government officials sued in their individual capacity under Bivens have available the defense of qualified immunity. See Butz v. Economou, 438 U.S. 478 (1978); Hynson v. City of Chester, 827 F.2d 932 (3rd Cir. 1987); Wilson v. Schillinger, 761 F.2d 921, 929 (3rd Cir. 1985). The rationale supporting the doctrine of qualified immunity is the need to avoid distracting federal officials from their government duties and to avoid deterring able people from public service. A government official should be able to perform his or her duties without fear of personal liability impacting his or her judgment. Harlow v. Fitzgerald, 457 U.S. 800, 806-07 (1982). As it applies to federal officers accused of constitutional wrongdoing, the doctrine of qualified immunity as set out in Harlow, provides that a good faith bar to suit can be established where the official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

5

In <u>Saucier v. Katz</u>, 531 U.S. 991, 121 S.Ct. 2151 (2001), the Supreme Court reiterated the two-step qualified immunity inquiry that must be "considered in proper sequence." <u>Id.</u> at 2155. First, in deciding whether a defendant is protected by qualified immunity, the Court must determine whether, "[t]aken in the light most favorable to the party asserting injury, ... the facts alleged show the officer's conduct violated a constitutional right." <u>Id.</u> at 2156. If so, the Court must then determine whether the right violated was clearly established in a "particularized ... sense: ... the relevant, dispositive inquiry ... is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Id.</u> at 2156. Additionally, the Supreme Court emphasized that a ruling on qualified immunity "should be made early in the proceedings so that the costs and expense of trial are avoided where the defense is dispositive." <u>Id.</u>

Assuming the Court decides that the conclusion that Norwood's religious dietary needs could be met from self selection from the institution's no-flesh and salad bars and that he did not require the religious alternative diet, rose to the level of a constitutional violation, we argue that defendant Romine is still entitled to qualified immunity as it was not clear his conduct was unlawful in the situation he confronted.

6

To overcome an official's immunity from suit, the right allegedly violated must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. <u>Anderson v. Creighton</u>, 483 U.S. 635, 640(1987).

With regard to religious dietary practices, Bureau of Prisons' policy as codified at 28 C.F.R.§ 548.20, states:

> ***The Bureau provides inmates requesting a religious diet reasonable and equitable opportunity to observe a religious dietary practice with the constraints of budget limitations and the security and orderly running of the institution and the Bureau through a religious diet menu. The inmate will provide a written statement articulating the religious motivation for participation in the religious diet program.***

28 C.F.R. § 548.20 (emphasis added). Per Bureau of Prisons' policy, Norwood submitted a written request to USP Lewisburg Religious Services staff on October 28, 2000, asking for a "Kosher or Halal" diet. In response to a question asking "What are the religious reasons for your dietary needs?," Norwood responded, "[t]he Holy Quoran based on Nation of Islam Teachings". (Record, p. 2, ¶ 5 and p. 21.) On October 31, 2000, Norwood was interviewed by Religious Services staff member Abdulfattah Jamiu, who is an Imam, or religious leader, in the Muslim Faith. Chaplain Jamiu concluded that Norwood's dietary needs could be satisfied by participation in the mainline component of the religious diet. (<u>Id.</u> at 2, ¶ 5.) This decision was documented on the inmate's religious interview form. (Record

7

at 32.)  As such, the Muslim Imam determined that Norwood's religious needs could be met by self-selecting from several food choices offered by USP Lewisburg Food Service--the main steam line entree, an alternative no-flesh menu, or select from a well stocked salad bar, which is available every day.  (Record at 2, ¶ 5.)

When Norwood appealed this decision via the Bureau of Prisons' Administrative Remedy Procedure, former Warden Romine denied the request, relying on the above conclusion by a Muslim cleric that Norwood's religious needs could be accommodated without placing him on the religious alternative diet.  Warden Romine is not a expert in the Muslim faith and it's dietary requirements.  Decisions requiring religious expertise were delegated to the staff in the Religious Services Department, and defendant Romine relied on the advice of the Muslim chaplain in denying Norwood's appeal.

The issue before Warden Romine was not <u>whether or not</u> Norwood had a constitutional right to practice his religion, but rather, whether his needs could be met with dietary selections outside the Religious Alternative Diet.  Warden Romine was advised by a Muslim chaplain that Norwood could satisfy his religious dietary requirements by self selecting from various diet options available to all prisoners.  Following this advice, Warden Romine denied the appeal.

8

Because "a reasonable officer" (Warden Romine) clearly thought his conduct was lawful in the situation he confronted, he is entitled to the defense of qualified immunity. Therefore, defendant Romine's motion for summary judgment should be granted.

B.  **The Religious Freedom Reformation Act Does Not Create a Separate Cause of Action for Money Damages Against Defendant Romine.**

Norwood's amended complaint seeks both equitable relief and monetary damages. His claims for declaratory relief (access to the religious diet of his choice and access to utensils not used to serve pork) are governed by RFRA; however, his claims for money damages are not.

RFRA does not expressly waive sovereign immunity claims under the Eleventh Amendment to the United States Constitution. Therefore, RFRA defendants cannot be sued for money damages. Gilmore-Bey v. Coughlin, 929 F. Supp. 146, 149 (S.D.N.Y. 1996); Wier v. Nix, 890 F. Supp. 769, 785 (S.D. Iowa 1995); Rust v. Clarke, 851 F, Supp. 377, 380-81 (D. Neb. 1994). See also Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 97-103 (1984).

As Norwood's claim for equitable relief was resolved with his placement on the religious diet of his choice on March 23,

2002[3], defendant Romine is entitled to summary judgment on the issue of money damages.

### V. Conclusion

For the reasons stated above, defendant Romine's motion for summary judgment should be granted with a certification that any appeal would be deemed frivolous, lacking in probable cause, and not taken in good faith.[4]

Respectfully submitted,

THOMAS A. MARINO
United States Attorney

*Joseph J. Terz*
JOSEPH J. TERZ
Assistant U.S. Attorney
MICHELE E. LINCALIS
Paralegal Specialist
316 Federal Building
240 West Third Street
Williamsport, PA 17701

Dated: December 13, 2002

---

[3] Norwood's claim for declaratory and injunctive relief should be dismissed as moot. See Rhodes v. Stewart, 488 U.S. 1 (1988); Reimers v. State of Oregon, 863 F.2d 630 (9th Cir. 1988); Moore v. Theiret, 862 F.2d 148 (7th Cir. 1988).

[4] Summary judgment is appropriate when supporting materials, such as affidavits and other documentation, show there are no material issues of fact to be resolved and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317 (1986). In Celotex, the Court held that "Rule 56(e)... requires that the non-moving party go beyond the pleadings by [his] own affidavits, or by 'depositions, answers to interrogatories and admissions on file', designate 'specific facts showing that there is a genuine issue for trial'". Id. at 324. Additionally, an opposing party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Celotex, 477 U.S. at 325.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL NORWOOD,
        Plaintiff

      v.                      Civil No. 1:CV-01-1005
                             (Caldwell, J.)
DONALD ROMINE, Warden,    (Smyser, M.J.)
        Defendant

### CERTIFICATE OF SERVICE BY MAIL

       The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

       That on December 13, 2002, she served a copy of the attached

**BRIEF IN SUPPORT OF DEFENDANT ROMINE'S
MOTION FOR SUMMARY JUDGMENT**

by placing said copies in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Williamsport, Pennsylvania.

Addressee:

Michael Norwood
Reg. No. 06970-014
U.S. Penitentiary
P.O. Box 1000
Lewisburg, PA 17837

                                                _/s/ Michele E. Lincalis_
                                                MICHELE E. LINCALIS
                                                Paralegal Specialist