cc: mg Smyser frm Dpty; Mr. Norwr -,
USM; AUSA Terz

(47)
2/10/03

cc: USP-L
NERO
JJJ
BBH
BBN

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL NORWOOD          : CIVIL NO: 1:CV-01-1005
    Plaintiff,        :
                         :
v.                       :
                         : (Magistrate Judge Smyser)
DONALD ROMINE,           :
    Defendant         :

FILED
HARRISBURG, PA

### MEMORANDUM AND ORDER

FEB 10 2003

MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

The plaintiff, a federal prisoner proceeding pro se, commenced this action by filing a complaint on June 6, 2001. On June 11, 2001, the plaintiff filed an amended complaint. The defendant, Donald Romine, is the Warden at the United States Penitentiary at Lewisburg. The plaintiff claims that the defendant's failure to provide the plaintiff with a diet consistent with his religious beliefs violates his rights under the First Amendment and the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb, et seq. The plaintiff is seeking monetary damages and injunctive relief.

On December 10, 2001, the defendant filed a motion to dismiss and for summary judgment. The motion was treated as a

AO 72A
(Rev.8/82)

motion for summary judgment, and by an Order dated March 27, 2002 that motion was denied.

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c).

On November 29, 2002, the defendant filed a motion for summary judgment. On December 13, 2002, the defendant filed a statement of material facts, a brief and documents in support of his motion for summary judgment. On December 16, 2002, the plaintiff filed a document entitled "Plaintiff's Opposition to Defendant's Motion for Summary Judgment," and on December 24, 2002, the plaintiff filed a brief in opposition to the motion for summary judgment. On January 9, 2003, the defendant filed a reply brief.

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

2

party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, though the non-moving party must make a showing sufficient to establish the existence of each element of his case on which he will bear the burden of proof at trial." *Huang v. BP Amoco Corp.*, 271 F.3d 560, 564 (3d Cir. 2001); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A material factual dispute is a dispute as to a factual issue that will affect the outcome of the trial under governing law. *Anderson, supra*, 477 U.S. at 248. In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). "Our function at the summary judgment

AO 72A
(Rev.8/82)

02/14/2003 11:24 FAX 5703267916    USAO WMSPT    → USAO HBG MCC    ☒004

stage is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Federal Home Loan Mortgage Corp. v. Scottsdale Ins. Co.*, ___ F.3d ___, 2003 WL 152738 at *8 (3d Cir. Jan. 22, 2003).

The defendant contends that he is entitled to qualified immunity from damages in connection with the plaintiff's First Amendment claim and that the plaintiff's RFRA claim for monetary damages is barred by the Eleventh Amendment. The plaintiff contends that these are the same arguments that the defendant raised and the court rejected in connection with the defendant's prior motion for summary judgment and that, therefore, the law of the case doctrine precludes the defendant from raising these arguments again. Contrary to the plaintiff's assertions, the arguments raised by the defendant in connection with the instant summary judgment motion (qualified immunity and Eleventh Amendment) are not the same arguments addressed in connection with the prior summary judgment motion (lack of personal involvement and the merits of

4

the plaintiff's First Amendment claim). Accordingly, the law of the case doctrine does not bar the current motion for summary judgment.

On December 30, 2002, the plaintiff filed a motion for Rule 11 sanctions against the defendant. The basis for the plaintiff's motion for sanctions is the plaintiff's contention that the summary judgment motion filed by the defendant on November 29, 2002 is barred by the law of the case doctrine. As discussed above, the motion for summary judgment is not barred by the law of the case doctrine. The plaintiff's motion for sanctions will be denied.

The plaintiff has not filed an affidavit or declaration in opposition to the defendant's motion for summary judgment. However, if allegations in a verified complaint are specific and based on personal knowledge, the complaint should be treated as an affidavit in support of or in opposition to a motion for summary judgment. *Wilson v. Maben*, 676 F.2d 581, 583 (M.D. Pa. 1987). *See also, Reese v. Sparks*, 760 F.2d 64, 67

5

(3d Cir. 1985). The plaintiff's amended complaint is verified. Thus, we will treat the allegations in the amended complaint as if they were made in an affidavit.

The plaintiff states in the amended complaint that he is a prisoner confined at the United States Penitentiary at Lewisburg, Pennsylvania (USP Lewisburg) and is a member of the Nation Of Islam. According to the plaintiff, under the dietary laws of the Nation Of Islam he must avoid pork and he must avoid eating food that has been prepared using utensils that have previously been used to serve or prepare pork. The plaintiff informed the defendant of his beliefs and further informed the defendant that the religious diet offered by USP Lewisburg (referred to by the plaintiff as the "commonfare diet") would satisfy the dietary demands of his faith. The plaintiff contends that while Sunni Muslim prisoners at USP-Lewisburg who have requested the "commonfare diet" have been accommodated, Muslim prisoners who are members of the Nation of Islam who have requested the "commonfare diet" have not been accommodated.

Edward Roberts, supervisory chaplain at USP-Lewisburg, states in his declaration that after the plaintiff requested a Kosher or Halal diet, the plaintiff was interviewed by an Imam, a religious leader in the Muslim faith. *Doc. 42* at 2. The Imam concluded that the plaintiff's dietary needs could be satisfied by participation in the mainline component of the religious diet, which would allow the plaintiff to self-select from several food choices offered by the prison including the main steamline entree, an alternative no-flesh menu, or a well-stocked salad bar. *Id.* Roberts further states that the determination that the plaintiff did not require the certified (Halal or Kosher) processed food component of the religious diet was made on the basis of the plaintiff's self-stated membership in the Nation of Islam and his adherence to Nation of Islam Teachings. *Id.* Roberts contends that Nation of Islam dietary requirements are set forth in the book **How to Eat to Live** by Elijah Muhammad, the founder of the Nation of Islam. *Id.* Roberts further contends that the Nation of Islam has clear and extensive dietary rules but the Nation of Islam does

not have any special cleaning requirements for eating utensils nor does it require the use of disposable utensils. *Id.*

The plaintiff filed an administrative grievance regarding the denial of his request for a Kosher or Halal diet. The defendant responded to the plaintiff's grievance as follows:

> In your Request for Administrative Remedy, you allege that you were treated unfairly as a member of the Nation of Islam by your removal from the Common Fare diet. You claim that you have been qualified for the common fare diet at every other facility. You further contend that your religious rights under BOP policy and the Religious Freedom and Restoration Act have been violated. You, therefore, demand to be restored to the Common Fare program.
>
> In response to the issues which you have raised, please be advised that effective November 1, 2000, a new "alternative diet" program was implemented which replaced what had been known for years as the "Common Fare" program. The new program places the burden on the individual to "self-select" from those foods which they may eat. A new "no flesh" option has been introduced to accomplish this selection. Also, per direction from the Central Office Religious Services branch, a list of questions was forwarded to each Religious Services department in the Bureau of Prisons. Based upon the stated need by each individual, a determination is made to

efficiently meet that religious dietary need. An individual may only request reconsideration after a six month period has elapsed.

Your dietary accommodation has been determined by your stated need; not by your religious affiliation. Unlike the old "Common Fare" program, where religious motivation was the standard, the alternative diet is based upon individual stated need. As you stated it, your dietary needs can be met by self-selection. You are, therefore, approved for the self-selection component ("no flesh") of the dietary program.

Based on the above, your request for relief is DENIED. According to the program guidelines, you may request to be interviewed again six (6) months subsequent to your previous interview. If you are dissatisfied with this response, you may appeal to the Regional Director, United States Federal Bureau of Prisons. Northeast Regional Office, United States Customs House- Seventh Floor, Second and Chestnut Streets, Philadelphia, PA 19106, within twenty (20) calendar days from the date of this response.

Doc. 42 at 30.

The defendant states in this declaration that in his capacity as Warden he has no involvement in the day-to-day decisions approving inmates for the religious diet program. Doc. 42 at 33. The defendant further states that the

9

evaluation and placement of inmates in the religious diet program is made by the institution's Religious Services Department as the chaplains in that Department are familiar with the religious requirements of different faith groups. *Id.*

We will first address the defendant's argument that he is entitled to qualified immunity with respect to the plaintiff's claim for monetary damages based on his First Amendment free exercise claim.

"The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 122 S.Ct. 2508, 2513 (2002). Despite their participation in constitutionally impermissible conduct, government officials "may nevertheless be shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* at 2515 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

10

Qualified immunity operates to ensure that, before they are subjected to suit, officers are on notice that their conduct is unlawful. *Id.* "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow, supra,* 457 U.S. at 818-19.

The threshold question in the qualified immunity analysis in this case is whether the plaintiff's allegations, if true, establish a violation of the First Amendment.

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. "Inmates clearly retain protections afforded by the First Amendment . . . including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987)(citation omitted). In order to establish a Free Exercise Clause claim, the plaintiff must establish that the defendants' actions contravene his sincere

11

religious beliefs. *Dehart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). The court has identified several factors to consider when determining the reasonableness of a regulation which impinges on a constitutional right, including: 1) whether there is a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forth to justify it; 2) whether there are alternative means of exercising the right that remain open to prison inmates; 3) the impact that an accommodation of the asserted right will have on guards and other inmates and on the allocation of prison resources generally; and 4) whether there are alternatives that fully accommodate the prisoner's rights at a *de minimis* cost to valid penological interests. *Turner, supra*, 482 U.S. at 89-91. Denial of a prisoner's request for a particular diet may amount to a violation of the free exercise clause of the First Amendment. *See Dehart, supra*, 227 F.3d at 61 (remanding case to

district court for further consideration of *Turner* factors in connection with prisoner's First Amendment religious diet claim).

district court for further consideration of *Turner* factors in connection with prisoner's First Amendment religious diet claim).

The plaintiff in this case alleges that he was denied a diet required by his religious beliefs. Specifically, the plaintiff alleges that he has been denied a Kosher or Halal diet as required by his religious beliefs. The defendant has not challenged the sincerity of the plaintiff's beliefs nor does the defendant contend that the refusal to accommodate the plaintiff's religious dietary requirements was reasonably related to legitimate penological interests. The plaintiff's allegations, if true, establish a violation of the First Amendment.

The next step in the qualified immunity analysis is to determine whether the right at issue was clearly established at the time in question. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is

13

doing violates that right." *Id.* at 202. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.*

In the instant case, the defendant denied the plaintiff's administrative appeal concerning his diet on November 29, 2000. The right of a prisoner to a diet consistent with his religious beliefs (unless refusal to provide such a diet is reasonably related to legitimate penological interests) was clearly established as of November 29, 2000. *See Dehart v. Horn*, 227 F.3d 47, 51 (3d Cir. Sept. 8, 2000)(addressing prison's denial of Buddhist prisoner's request for vegetarian diet). *See also Bass v. Coughlin*, 976 F.2d 98, 99 (2d Cir. 1992)(holding that it is clearly established that prison officials must provide a prisoner a diet that is consistent with his religious scruples.)

The defendant contends that he relied on the conclusion of the Imam who interviewed the plaintiff that the plaintiff's religious needs could be accommodated without placing him on the religious alternative diet. The defendant argues that based on the Imam's conclusion a reasonable officer in his position would have thought his conduct was lawful, and therefore, he is entitled to qualified immunity.

In *Dehart, supra*, the Third Circuit clarified that the relevant inquiry in determining whether a prisoner has a right to a particular diet, subject to the *Turner* analysis, is whether the prisoner's belief is sincerely held and religious in nature. 227 F.3d at 52. The inquiry is not whether the belief is sufficiently orthodox to deserve recognition. *Id.* at 55.

In the instant case, according to Edward Roberts, the Supervisory Chaplain, the Imam who made the decision not to provide the plaintiff with a Kosher or Halal diet made that decision on the basis of his view that the Nation of Islam does

15

not require such a diet. In the case of a prisoner who has stated as the religious justification for the special diet that it is the diet prescribed by a certain religious group to which he belongs, it may provide some evidence of an absence of sincerity that the requested diet is not the diet prescribed by that religious group. But the defendant does not contend or demonstrate that he used a sincerely held belief standard. He contends that he should have qualified immunity because he relied on the decision of the Imam and because that decision was reasonable. We conclude that it was not reasonable for the defendant to rely on the decision of the Imam when it is not shown that to have done so was to have provided for the plaintiff's right to a diet that was in accord with his sincerely held religious beliefs. We believe that under the applicable law and facts, we must conclude that a prison warden must be held to have known that to find an absence of a sincerely held religious belief and to deny a prisoner a particular diet on the sole basis that the diet is not considered a requirement by some of, or even the great majority of, the members of a particular religion would result in a

16

violation of the prisoner's First Amendment rights. This is so because in addressing a prisoner's request for a particular diet the issue is not whether such a diet is an orthodox requirement of a particular religion. *See generally, Thomas v. Review Board of Indiana Employment Security Division*, 450 U.S. 707, 715-716 (1981)("[T]he guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect."). Rather, the issue is whether the prisoner's belief that such a diet is necessary is sincerely held and religious in nature, in the prisoner's scheme of things. *Dehart, supra*, 227 F.3d at 51. Accordingly, we will deny the defendant's motion for summary judgment on the basis of qualified immunity.

The defendant contends that he is entitled to summary judgment on the plaintiff's claim for monetary damages under RFRA. The defendant's argument on this point is as follows:

> Norwood's amended complaint seeks both equitable relief and monetary damages. His claims for declaratory relief (access to the religious diet of his choice and access to utensils not used to serve pork) are governed

17

> by RFRA; however, his claims for money damages are not.
>
> RFRA does not expressly waive sovereign immunity claims under the Eleventh Amendment to the United States Constitution. Therefore, RFRA defendants cannot be sued for money damages. Gilmore-Bey v. Coughlin, 929 F.Supp. 146, 149 (S.D.N.Y. 1996); Wier v. Nix, 890 F.Supp. 769, 785 (S.D. Iowa 1995); Rust v. Clarke, 851 F.Supp. 377, 380-81 (D.Neb. 1994). See also Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 97-103 (1984).
>
> As Norwood's claim for equitable relief was resolved with his placement on the religious diet of his choice on March 23, 2002, defendant Romine is entitled to summary judgment on the issue of money damages.

Doc. 40 at 9-10 (footnote omitted).

All of the cases cited by the defendant involved states and state officials. The Eleventh Amendment applies to states and state officials sued in their official capacities. The defendant has not explained how the Eleventh Amendment has an application in a *Bivens* action where the defendant is a federal official sued in his individual capacity. We will not grant summary judgment to the defendant on the plaintiff's RFRA claim.

18

AND NOW, this _10th_ day of February, 2003, **IT IS HEREBY ORDERED** that the plaintiff's motion (doc. 45) for sanctions is **DENIED**. **IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (Doc. 39) is **DENIED**. A pretrial conference shall be held on April 21, 2003, at 3:00 p.m., in Courtroom No.5, Eleventh Floor, Federal Building, Third and Walnut Streets, Harrisburg, Pennsylvania. The parties shall file their pretrial memoranda on or before April 11, 2003. A writ of habeas corpus ad testificandum will be issued to secure the presence of the plaintiff at the pretrial conference.

J. Andrew Smyser
Magistrate Judge

Dated: February _10_, 2003